STATE of Minnesota, Petitioner,
Appellant,

v.

Keith Edward MISQUADACE,
Respondent.

No. C4–01–81.

Supreme Court of Minnesota.

May 9, 2002.

Mike Hatch, Minnesota Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, Bradley C. Rhodes, Aitkin County Attorney, Aitkin, for appellant's.

John M. Stuart, Minnesota State Public Defender, Michael F. Cromett, Assistant State Public Defender, Office of the State Public Defender, Minneapolis, for Respondent's.

OPINION

BLATZ, Chief Justice.

Respondent Keith Edward Misquadace was charged with multiple crimes and entered a plea to four offenses in exchange for the state's agreement to a total combined sentence of 266 months, which represented three upward dispositional departures and three upward durational departures. On the sentences for three of the offenses, the district court departed from the guidelines sentence "pursuant to the plea agreement" without stating any other reason for the departures. On appeal, Misquadace argued that the departures on two of these sentences were not authorized under the guidelines. The court of appeals held that the agreement of the parties was insufficient grounds to depart on the two sentences. We affirm and remand to the district court for resentencing in accordance with this opinion.

I.

Upon allegations that he committed numerous crimes in Aitkin County from June 1995 to August 1999, respondent Keith Edward Misquadace was indicted for first-degree premeditated murder and was charged by five separate complaints with additional offenses including third-degree burglary, felony theft, third-degree criminal damage to property, motor vehicle theft, fleeing a peace officer, introducing contraband into a jail, and six counts of first-degree criminal sexual conduct.

The first case set for trial was the first-degree murder charge. After voir dire, Misquadace entered a negotiated plea[1] to

1. Misquadace did not admit guilt for his offenses, but acknowledged that the state had sufficient evidence to obtain convictions. *See*
*North Carolina v. Alford,* 400 U.S. 25, 37–38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *State v. Goulette,* 258 N.W.2d 758, 760 (Minn.1977)

four offenses, under which the state would recommend an aggregate sentence of 266 months, as follows:

(1) 180 months, executed, for first-degree manslaughter, Minn.Stat. § 609.20(2) (2000)—the statutory maximum and an upward durational departure from the presumptive 86-month sentence;

(2) 13 months, executed and consecutive, for fleeing a peace officer, Minn. Stat. § 609.487, subd. 3 (2000)—an upward dispositional and durational departure from the presumptive stayed 12-month sentence;

(3) 60 months, executed and consecutive, for third-degree burglary, Minn. Stat. § 609.582, subd. 3 (2000)—an upward dispositional and durational departure from the presumptive stayed concurrent sentence of 18 months; and

(4) 13 months, executed and consecutive, for introduction of contraband into a jail, Minn.Stat. § 641.165, subd. 2(b) (2000)—an upward dispositional and downward durational departure from the presumptive stayed concurrent sentence of 21 months.

Misquadace submitted to the court a Rule 15 petition acknowledging his willingness to exchange *Alford* pleas for the sentencing recommendation. *See* Minn. R.Crim. P. 15.01. He also appeared in court and agreed with characterizations of the sentencing agreement as "advantageous," "good," that it "clears the slate," and that it was what he wanted to do.

Several weeks later, at the sentencing hearing, Misquadace made an oral motion to withdraw his pleas, apparently on the basis that he had changed his mind. The court found no valid reason to allow withdrawal of the pleas and proceeded with sentencing. The court cited both the plea agreement and aggravating factors set forth in the pre-sentencing report in support of the upward durational departure for the manslaughter sentence, but cited only the plea agreement as grounds for departing from the sentencing guidelines for the burglary, fleeing a peace officer, and introducing contraband into a jail sentences.

Misquadace appealed to the court of appeals on the basis that there was no valid reason for departure on either the burglary or contraband sentences.[2] The court of appeals reversed, holding that the agreement of the parties was an insufficient basis on which to depart from the presumptive burglary and contraband sentences. *State v. Misquadace*, 629 N.W.2d 487, 490–91 (Minn.App.2001). The court noted that this court held in *State v. Givens*, 544 N.W.2d 774 (Minn.1996), that a defendant could waive sentencing under the guidelines, but that the statute underlying this court's reasoning in *Givens* was subsequently changed by the legislature. *Misquadace*, 629 N.W.2d at 490. Specifically, Minn.Stat. § 244.09 (2000), which authorized the sentencing guidelines, was modified by the legislature in 1997 to provide that: "Sentencing pursuant to the sentencing guidelines is not a right that accrues to a person convicted of a felony; it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing." Act of May 6, 1997, ch. 96, § 1, 1997 Minn. Laws 694, 695. Consequently,

(holding that plea from defendant who maintains innocence may be accepted if evidence would support a jury verdict of guilty and plea is voluntarily, knowingly, and understandingly entered).

2. Because Misquadace did not appeal his sentence for fleeing a peace officer, that issue was not addressed by the court of appeals and is not an issue raised on appeal.

the court of appeals held that "under current statutory law, a sentencing court must support any departure from the presumptive sentence with substantial and compelling reasons and it is not sufficient that the defendant merely accede to the departure in a plea bargain." *Misquadace*, 629 N.W.2d at 491. Thus, because the sentencing departures for the burglary and contraband charges were based solely on Misquadace's consent, the court of appeals reversed the burglary and contraband sentences, and remanded the entire case for resentencing under the guidelines. *Id.*

## II.

 A district court's decision to depart from the sentencing guidelines is within that court's discretion, and will not be disturbed absent an abuse of discretion. *State v. Schmit*, 601 N.W.2d 896, 898 (Minn.1999). However, in this case, the sentencing raises an issue regarding interpretation of Minn.Stat. § 244.09. This court reviews statutory interpretation, an issue of law, de novo. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996).

 The power to fix the limits of punishment for criminal acts lies with the legislature. *State v. Osterloh*, 275 N.W.2d 578, 580 (Minn.1978). However, the imposition of a sentence in a particular case within those limits is a judicial function. *State v. Olson*, 325 N.W.2d 13, 18 (Minn. 1982). In light of a court's discretion in sentencing, the sentencing guidelines were created to assure uniformity, proportionality, rationality, and predictability in sentencing. *See* Minn.Stat. § 244.09, subd. 5(2) (2000).

> The purpose of the sentencing guidelines is to establish rational and consistent sentencing standards which reduce sentencing disparity and ensure that sanctions following conviction of a felony

are proportional to the severity of the offense of conviction and the extent of the offender's criminal history. Equity in sentencing requires (a) that convicted felons similar with respect to relevant sentencing criteria ought to receive similar sanctions, and (b) that convicted felons substantially different from a typical case with respect to relevant criteria ought to receive different sanctions.

Minnesota Sentencing Guidelines I; *see also State v. Garcia*, 302 N.W.2d 643, 646–47 (Minn.1981) (describing sentencing guidelines grid, which factors into the sentence criminal history score and the severity level of offense). As other states and the federal government have done, the Minnesota Sentencing Guidelines Commission uses as its primary relevant sentencing criteria the offense of conviction and the offender's criminal history. Minnesota Sentencing Guidelines I and II; *see also* U.S. Sentencing Guidelines Manual ch. 5, pt. A (2001); Del.Code Ann. tit. 11, § 6580(c) (2001); Wash. Rev.Code Ann. § 9.94A.010(1) (West Supp.2002). Because the presumptive sentence is a function of the offender's criminal history and the offense for which he or she is sentenced, offenders committing the same offense with the same criminal history receive approximately the same sentence. In this way, the guidelines are designed to predictably achieve rational and consistent sentences. *See* Minnesota Sentencing Guidelines I; *Garcia*, 302 N.W.2d at 647.

To maintain consistency, departures from the guidelines are discouraged. Minnesota Sentencing Guidelines I. The reasons for a departure, while nonexclusive, are intended to apply to a small number of cases, and each departure must be based on the offense of conviction rather than charges that were dropped or never alleged. Minnesota Sentencing Guidelines II.D.2, II.A.01 cmt., and II.D.01 cmt. The

guidelines commission believes the latter provision is necessary because allowing uncharged or dropped charges to affect the sentence would result in prosecutors and defense attorneys being less accountable in plea negotiations. Minnesota Sentencing Guidelines II.A.01 cmt.

Nonetheless, any rational system of sentencing must allow for different sentences to be imposed when substantial and compelling circumstances warrant different treatment. *See* Minnesota Sentencing Guidelines II.D. Thus, a court may depart from the presumptive sentence provided that the court finds and makes a record of a substantial and compelling justification for a departure. *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985); *see also* Minn.Stat. § 244.10, subd. 2 (2000) (requiring district courts to provide written reasons justifying a departure). The question presented to the sentencing court when considering a departure is whether the defendant's conduct in the offense of conviction was significantly more or less serious than that typically involved in the commission of the crime in question. *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984). Thus, the nonexclusive reasons for departure outlined by the Minnesota Sentencing Guidelines Commission include such factors as whether the victim was the aggressor in the incident (a mitigating factor) or whether the victim was particularly vulnerable due to age or infirmity (an aggravating factor). Minnesota Sentencing Guidelines II.D.2. The question presented here is whether a plea agreement, standing alone, provides substantial and compelling justification for departure.

In *Givens*, we examined a sentence that constituted a downward dispositional departure and an upward durational departure imposed after a plea agreement was negotiated by the parties and accepted by the district court. 544 N.W.2d at 775.

Givens admitted burglarizing the home of a 74 year old woman, and pleaded guilty to first-degree burglary. *Id.* The sentencing court departed from the guidelines, staying imposition of a 96-month sentence rather than imposing the presumptive 48-month sentence. *Id.* When Givens violated his probation, the sentence was executed. *Id.* On appeal, we held that the upward durational departure was justified based on the defendant's exploitation of the victim's vulnerability, but stated: "We believe that the real question raised by this case is whether a defendant may waive his or her right to be sentenced under the guidelines." *Id.* at 776–77. Noting that "it has long been settled law that courts will honor a defendant's lawful, 'intentional relinquishment or abandonment of a known right or privilege' "—such as *Miranda* rights or the right to a jury trial—we held "that defendants may relinquish their right to be sentenced under the guidelines." 544 N.W.2d at 777 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

The year after *Givens* was published, the legislature amended subdivision 5 of section 244.09 by adopting the following language:

Although the sentencing guidelines are advisory to the district court, the court shall follow the procedures of the guidelines when it pronounces sentence in a proceeding to which the guidelines apply by operation of statute. *Sentencing pursuant to the sentencing guidelines is not a right that accrues to a person convicted of a felony;* it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing.

Act of May 6, 1997, ch. 96, § 1, 1997 Minn. Laws 694, 695 (emphasis added). In the same act, the legislature also ordered the sentencing guidelines commission to

"study the advisability of allowing a plea agreement to be used as a reason for a departure from a presumptive sentence" before recommending that the guidelines be changed to make such a departure impermissible. Act of May 6, 1997, ch. 96, § 11; 1997 Minn. Laws 694, 702. The legislature also reserved for itself the authority to make that change to the guidelines. *Id.*

Subsequent to these legislative acts, neither the legislature nor the sentencing guidelines commission has modified the guidelines to explicitly allow or prohibit the use of plea agreements to depart from the sentencing guidelines. The commission did, however, amend its *commentary* to discuss the practice:

> Plea agreements are important to our criminal justice system because it is not possible to support a system where all cases go to trial. However, it is important to have balance in the criminal justice system where plea agreements are recognized as legitimate and necessary and the goals of the sentencing guidelines are supported. If a plea agreement involves a sentence departure and no other reasons are provided, there is little information available to provide for informed policy making or to ensure consistency, proportionality, and rationality in sentencing.

Departures and their reasons highlight both the success and problems of the existing sentencing guidelines. When a plea agreement is made that involves a departure from the presumptive sentence, the court should cite the reasons that underlie the plea agreement or explain the reasons the negotiation was accepted.

Minnesota Sentencing Guidelines II.D.04 cmt. (effective August 1, 1998).

Thus, the issue before us is whether—given the statutory amendment and modifications to the sentencing guidelines commentary since *Givens*—a plea agreement, without more, can be the basis for a departure from the sentencing guidelines. The state argues that regardless of whether sentencing under the guidelines is a right, a plea agreement can nevertheless be considered a substantial and compelling circumstance that justifies departure from the guidelines.[3] Misquadace argues that because the legislature clarified that sentencing under the guidelines was not a waivable right, a sentence must fit within the guidelines. Misquadace also argues that the purpose of the sentencing guidelines would be undermined by allowing departures pursuant only to plea agreements.

We believe that the fairest reading of the 1997 amendment is that the legislature removed whatever "right" to sentenc-

---

**3.** In support of this argument, the state cites *In re Breedlove*, 138 Wash.2d 298, 979 P.2d 417 (1999). Breedlove agreed to upward departures from the Washington Sentencing Reform Act (WSRA), and the Washington Supreme Court affirmed the departures, holding that the plea agreement was a substantial and compelling justification for the upward departure: "Through the trial judge, who has knowledge of the facts of the criminal incident and of the negotiating parties, the law provides protection to the defendant and to the public to ensure that a plea agreement is consistent with the interests of justice * * *

and the goals of the [WSRA]." *Breedlove*, 979 P.2d at 425. However, unlike Minnesota law, the WSRA "specifically authorizes agreements which recommend sentences outside the standard sentencing range." *Id.* at 424 (citing Wash. Rev.Code § 9.94A.080(3) (2000); *State v. Lee*, 132 Wash.2d 498, 939 P.2d 1223 (1997)). Therefore, the state's reliance on *Breedlove* is misplaced given the absence of comparable Minnesota statutory language, the Minnesota legislature's delegation of this question to the sentencing commission in 1997, and the commission's subsequent amendments to the commentary cited above.

ing under the guidelines was provided therein, but that the legislature did not want sentencing pursuant only to a plea agreement to be entirely prohibited until the sentencing guidelines commission analyzed how such sentencing fit within the entire system.[4] The 1999 sentencing guidelines commentary, similarly, reflects some ambivalence in its explanation of why plea agreements are a difficult fit: On the one hand, "Plea agreements are important to our criminal justice system because it is not possible to support a system where all cases go to trial," but on the other, "If a plea agreement involves a sentence departure and no other reasons are provided, there is little information available to provide for informed policy making or to ensure consistency, proportionality, and rationality in sentencing." Minnesota Sentencing Guidelines II.D.04 cmt. (effective August 1, 1998).

We believe that the overriding principle in all sentencing is rationality, predictability, and consistency, and plea agreements can exist within the framework of the sentencing guidelines. Therefore, in order to abide by the guidelines' overriding principles, we conclude that negotiated plea agreements that include a sentencing departure are justified under the guidelines in cases where substantial and compelling circumstances exist. A plea agreement standing alone, however, does not create such circumstances in its own right. Rather, when reviewing a plea agreement that includes a sentencing departure, the court must determine whether the offense of conviction reflects any aggravating or mitigating circumstances that warrant a departure. Indeed, the parties might agree on grounds for departure that the court could review for adequacy. However, the grounds for departure must reflect whether the offense is any more or less serious than the typical offense of conviction, mindful that uncharged or dismissed offenses are not to be considered and that departures are intended to apply in a small number of cases. *Cox*, 343 N.W.2d at 643; Minnesota Sentencing Guidelines II.A.01 cmt. and II.D.01 cmt.

We recognize that, since *Givens*, agreements on pleas and sentences have often been reached based on the parties' assessments of the relative strengths and weaknesses of a case going to trial, rather than necessarily on the circumstances of the offense of conviction. Rather than configure the agreed-upon sentence to reflect possible problems of proof, however, the state should consider amending the charge to better reflect what can actually be proven. The court must then proceed to establish a factual basis for the plea, requiring that the charge fit the offense to which the defendant pleads. Minn. R.Crim. P. 15.01(20).

Nonetheless, we fully recognize the effect of our holding—that plea agreements cannot form the sole basis of a sentencing departure—may be to discourage such agreements. It is for the legislature, however, to make the policy decision that sen-

---

4. The state argues that section 244.09 violates the separation-of-powers doctrine, *see* Minn. Const. art. III § 1, because of the directive: "Although the sentencing guidelines are advisory to the district court, *the court shall follow the procedures* of the guidelines when it pronounces sentence in a proceeding to which the guidelines apply by operation of statute." Minn.Stat. § 244.09, subd. 5(2) (emphasis added). The statutory language at issue imposes on the judiciary only the procedures of the guidelines-use of criminal history and the offense of conviction, while allowing for departures. The procedures set forth allow for adequate exercise of judicial discretion in individual sentences imposed so that separation of powers principles are not offended. Moreover, the judiciary shares with the legislature the goals of consistency, predictability, and rationality in sentencing.

tencing pursuant to plea agreements alone does not seriously threaten the goal of rational and consistent sentencing. Until then, we will require courts to articulate substantial and compelling circumstances other than a plea agreement when departing from the guidelines. Accordingly, we hold that all departures from the Minnesota Sentencing Guidelines must be supported by substantial and compelling circumstances, and that a plea agreement—standing alone—is not a sufficient basis to depart from the sentencing guidelines.

### III.

 Applying these principles to the sentence in this case, the record is not clear that aggravating circumstances existed with respect to the sentences for burglary and fleeing a peace officer. The district court noted aggravating factors in the pre-sentencing report that justify the upward departure in the manslaughter sentence, but only cited the plea agreement as grounds for departing from the sentencing guidelines for the burglary and contraband sentences. This record, therefore, does not justify the departures for those sentences.

The state argues that any remand must encompass the entire sentencing package—not merely the sentences in which the district court erred—because a defendant should not be allowed to attack the unfavorable aspects of a plea agreement while retaining the favorable aspects. However, in light of our previous ruling in *Givens*, on which the parties and the district court may have relied, on remand the district court should have an opportunity to determine whether substantial and compelling circumstances warrant the departures from the presumptive sentences for the burglary and contraband offenses.

In addition, because this holding establishes a new rule of law, retroactive application is not required. Given the purposes to be served, the extent of reliance by the parties and courts on previous standards, and the effect of retroactivity on the administration of justice, prospective application is appropriate. *See State v. Olsen,* 258 N.W.2d 898, 907 n. 15 (Minn.1977) (delineating standards for retroactive effect). We limit application of the ruling to this case and to pending and future cases.

Affirmed and remanded to the district court for further proceedings in accordance with this opinion.