**STATE of Minnesota, Respondent,**

v.

**Malachi KILGORE, Appellant.**

No. C1–02–1490.

Court of Appeals of Minnesota.

May 27, 2003.

Hennepin County District Court, File No. 00017431.

Mike Hatch, Attorney General, St. Paul, MN, and Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Lawrence W. Pry, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge, RANDALL, Judge, and SHUMAKER, Judge.

## OPINION

RANDALL, Judge.

In this appeal from the district court's denial of postconviction relief, appellant argues that he improperly received an upward departure under the sentencing guidelines and, therefore, his sentence should be reduced. We affirm,

## FACTS

Appellant shot and killed Larry Arneberg on January 19, 2000. The grand jury indicted appellant for first-degree murder. After extensive plea negotiations, appellant and the state agreed that appellant would plead guilty to the lesser-included offense of second-degree murder and serve 396 months in prison, a 90–month upward durational departure. The salient fact underlying the plea negotiation is as follows: 396 months equals 33 years. On a 33–year sentence for murder in the second degree, a defendant will serve 22 years behind bars and 11 of the 33 years will be served on probation. If a defendant is convicted of murder in the first degree in Minnesota, the sentence is automatic and the sentencing judge has absolutely no discretion. Life imprisonment is the sentence, and since 1989, an inmate must serve 30 years behind bars before even becoming eligible for a parole hearing. Eligibility for a parole hearing carries absolutely no guaranties that the inmate will ever be paroled. A life sentence in Minnesota means a minimum of 30 years behind bars and no guaranties of any release in a person's lifetime. Appellant and his attorney traded away any possibility that appellant would be found guilty of murder in the first degree and be sentenced to a minimum of 30 years or more behind bars in return for agreeing to accept a sentence of 33 years, as outlined above; meaning, 22 years behind bars and 11 years on probation. That was the bargain. The defendant and the state and the district court understood it perfectly. Appellant got exactly what he wanted and the state got a long enough

sentence to satisfy its interests in the administration of justice.

At his guilty plea hearing, appellant testified that the victim loaned him money, which he had not repaid. Appellant testified that the victim was putting pressure on him to repay the money. According to appellant, the victim arranged a meeting with him at an acquaintance's apartment through co-defendant Jonathan Wood, appellant's cousin. Wood and appellant decided to take a gun to the meeting and appellant retrieved a gun that he kept in a nearby vacant apartment.

During the meeting, the victim and appellant argued over the debt. Appellant testified that he attempted to repay the debt with jewelry rather than cash, but the victim refused. According to appellant's testimony, the victim threatened appellant and appellant's family. Appellant then shot the victim three times in the back, killing him. Appellant then stole the victim's wallet and briefcase and disposed of the weapon.

The district court imposed the sentence following Kilgore's guilty plea. Before imposing the sentence, the court stated:

All right, I do accept your waiver of your rights. I believe that they were knowing, intelligent, and voluntarily waived. There is a factual basis here to support a charge of Murder in the Second Degree—Intentional Murder, and so I am prepared to go forward with sentencing as discussed.

The court imposed a 396–month prison term pursuant to the negotiated plea agreement, stating:

I should note for the record that this is an upward durational departure from the sentencing guidelines, and the basis for the departure is the agreement of the parties which was discussed with the Court prior to the entry of the plea.

In April 2002, appellant filed a motion for postconviction relief seeking to correct his "illegal sentence." Appellant argues that under *Misquadace*, since the district court did not put any aggravating factors on the record, he is entitled to the presumptive sentence for intentional murder in the second degree for 306 months. The district court denied his petition. We agree with the district court.

## ISSUE

Did the district court properly deny appellant's motion for postconviction relief?

## ANALYSIS

In 1996, the Minnesota Supreme Court stated:

It has long been settled law that courts will honor a defendant's lawful, 'intentional relinquishment or abandonment of a known right or privilege'—such as Miranda rights or the right to a jury trial—we hold that defendants may relinquish their right to be sentenced under the guidelines.

*State v. Givens*, 544 N.W.2d 774, 777 (Minn.1996) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

In 2002, the Minnesota Supreme Court refined *Givens* to indicate that even when there is a negotiated plea agreement, there must be sufficient aggravating factors on the record to support an upward departure. There, the court stated:

In addition, because this holding establishes a new rule of law, retroactive application is not required. Given the purposes to be served, the extent of reliance by the parties and courts on previous standards, and the effect of retroactivity on the administration of justice, prospective application is appropriate. * * * *We limit application of the ruling to*

*this case and to pending and future cases.*

State v. Misquadace, 644 N.W.2d 65, 72 (Minn.2002) (citation omitted) (emphasis added). The court, in unambiguous language, stated this refinement was only to be applied prospectively. *Misquadace* was filed on May 9, 2002. Appellant pleaded guilty on October 3, 2000. Appellant's time to appeal expired 90 days from October 3. Minn. R.Crim. P. 28.02.

■ In *Misquadace*, the court did not explicitly define the phrase "pending and future cases." This court took up the question of whether a case was pending where the time for appeal had not yet run out. Answering in the affirmative, we said:

> Although [appellant] had already been sentenced, the time for a direct appeal had not yet expired when *Misquadace* was filed. * * * We believe that [this] appeal falls within the supreme court's intended meaning of a 'pending' case.

State v. Sanchez–Sanchez, 654 N.W.2d 690, 693 (Minn.App.2002). *Sanchez* was a reasonable interpretation of "pending." To say that appellant's case was "pending" when *Misquadace* was filed stretches pending to unacceptable lengths. His appeal time had expired approximately 16 months earlier.

Here, the district court had *Givens* in mind when examining appellant's plea agreement. Based on *Givens*, the law in effect when appellant was sentenced, the district court's upward departure, based on appellant's negotiated his plea agreement, was proper.

This is as it should be. A criminal defendant has the right to try and make as good a deal for himself as he can. There is no danger to any state's "sentencing schemes" (Minnesota Sentencing Guidelines) by allowing criminal defendants the opportunity to bargain for a settled sentence. No plea agreement by a defendant is any good at all until, first, the state accepts it, and then, lastly and most importantly, the sentencing judge examines it and then accepts it. The seminal case on a criminal defendant's right to bargain for himself is *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (allowing defendant to maintain innocence but agreeing that the jury may convict him based on the facts).

In *Alford*, a defendant was faced with a first-degree murder indictment in a state with the death penalty. Alford, throughout the pretrial proceedings, always maintained that he was not guilty, but he and his criminal defense attorney acknowledged the strength of the state's case and the possibility that going through a contested trial could result in a verdict of murder in the first degree and that could result in being executed. Alford and the state reached an agreement whereby the state would drop the charge of murder in the first degree if he would plead guilty to murder in the second degree and accept a lengthy sentence behind bars. Alford wanted to do that to save himself from the possibility of being executed, but insisted on maintaining his innocence. His right to plead guilty while maintaining innocence was rejected at various levels. Ultimately the case went to the United States Supreme Court, wherein the supreme court held that a defendant had an absolute right (assuming the state and the sentencing judge would go along with it) to plead guilty in return for a bargained-for sentence, and avoid the danger of something worse, without admitting to all the facts that would constitute the essential elements of the crime. As part of the holding, the sentencing judge was allowed to examine the evidence the state proposed, and the defendant could concede that, although maintaining his innocence, a jury

could look at the state's evidence and find him guilty. This was a sensible decision. *Alford* recognized the inalienable right of any defendant, any person, to bargain for his life. *Alford* did not impinge on any right of the prosecutor (the state) because there would not be any deal unless the state agreed to it.

The Minnesota Supreme Court accepted the logic of *Alford* in *State v. Goulette*, wherein the court stated in part: "There are situations where defendant's decision to plead guilty is a rational decision even though defendant for some reason cannot bring himself to admit his guilt." *State v. Goulette*, 258 N.W.2d 758, 761 (Minn.1977).

*Givens* did nothing but reasonably apply the logic of *Alford* and *Goulette* to cases involving charges of less than murder in the first degree. *Givens* was a well-reasoned, common sense decision.

With the knowledge today among the criminal defense bar that prosecutors will argue aggressively for upward departures in virtually every serious case, it makes sense at times for criminal defendants to bargain for a known upward departure rather than face the unknown of a double, triple or higher upward departure.

*Alford/Goulette* pleas and negotiated guilty pleas for an upward departure uphold the right of the accused to bargain for a settled sentence. *Misquadace* changed the rules somewhat surrounding sentencing issues in negotiated plea agreements and insists on something in the record over and above the plea agreement to show that an upward departure is warranted. There, the court stated, "A plea agreement standing alone, however, does not create [aggravating] circumstances in its own right." *Misquadace*, 644 N.W.2d at 71.

Today, although appellant was sentenced under *Givens* (pre-*Misquadace*), and although appellant received the benefit of what appears to be a rational plea agreement, he attempts now to argue for a *Misquadace* analysis, argues that he is entitled to be resentenced to just a presumptive sentence for intentional murder in the second degree, and further argues that he is entitled to this without exposing himself to the state backing away from the plea agreement and giving appellant a chance to stand trial on the original indictment, murder in the first degree. The district court did not see it that way and neither do we. The district court in the postconviction hearing was satisfied that appellant, assisted by defense counsel, entered an intelligent and voluntary plea to murder in the second degree and accepted a predetermined sentence of 396 months for the express purpose of avoiding a trial on the charge of murder in the first degree. Appellant opted for a bargain and he received the benefit of the bargain. We conclude the postconviction court properly denied appellant's petition to be resentenced.

Today, with *Misquadace* in effect, it is a must when the prosecution and the defense and the district court settle on a plea agreement involving an upward departure that, on the record, the court recites aggravating factors (using the Minnesota Sentencing Guidelines and caselaw upholding upward durational departures as examples).[1]

Supporting appellant's rational plea bargain (which he appeals today), permissible under *Givens*, the facts in appellant's case are enough to show a verdict of murder in

---

1. "When a plea agreement is made that involves a departure from the presumptive sentence, the court should cite the reasons that underlie the plea agreement or explain the reasons the negotiation was accepted." *Misquadace*, 644 N.W.2d at 70 (citing Minn. Sent. Guidelines II.D.04 cmt. (effective August 1, 1998)).

the first degree is possible if appellant were to stand trial as originally charged.

Appellant retrieved a hidden weapon *before* the meeting. Though the discussion got heated, it was not until the discussion was over and the victim was *leaving* the scene that appellant shot him *in the back.* After killing the victim, appellant robbed him, stealing his wallet and briefcase. With these facts and other evidence the state would have, a jury could rationally have found that appellant committed intentional premeditated murder. To this possibility, appellant, not imprudently, chose to plead guilty to second-degree murder and accept a sentence involving a 90–month upward departure, as set out before, giving appellant a settled time behind bars of 22 years rather than a minimum of 30, and no guarantee of release ever in his lifetime.

Appellant made his deal. It was honored. He was most certainly not prejudiced by the voluntary plea agreement he entered into. The district court properly rejected his petition to be resentenced downward to the presumptive sentence of 306 months.

### DECISION

Appellant was sentenced pursuant to the terms of his negotiated plea agreement. He received the benefit of his bargain. The bargain alone, at that time, was sufficient to support a modest (approximate 30 percent) upward departure. The new rule announced in *Misquadace* is not retroactive. Appellant's case was not pending at the time *Misquadace* was released. The district court properly denied appellant's motion to modify his sentence.

**Affirmed.**