William Lloyd HUTCHINSON,
Appellant,

v.

STATE of Minnesota, Respondent.

No. C3–02–1961.

Supreme Court of Minnesota.

May 13, 2004.

Mary M. McMahon, Special Asst. State Public Defender, Roseville, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

MEYER, Justice.

In this case we are asked to decide whether, under *Fiore v. White*, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001) (per curiam), our holding in *State v. Misquadace*, 644 N.W.2d 65 (Minn.2002), which we expressly applied to pending and future cases, should instead apply from the effective date of an amendment to Minn. Stat. § 244.09 in 1997.

William Hutchinson, the appellant, was charged with third-degree criminal sexual conduct and terroristic threats in connection with an incident involving his girlfriend, who had obtained an order for protection against him. The complaint alleged that on December 11, 2000, he ordered her to drive around Minneapolis, threatened her, forced her to have oral sex, and smashed the stereo and mirror of her car. Hutchinson entered a negotiated plea of guilty to an amended charge of first-degree criminal damage to property in exchange for dismissal of the original charges, and he agreed to a 48-month executed sentence. The agreed-to sentence is a dispositional and durational departure from the presumptive 17–month stayed sentence for an offender with Hutchinson's criminal history. The district court accepted the plea agreement and, without articulating any additional reasons for departure, imposed the 48–month prison term on April 10, 2001. Hutchinson did not take a direct appeal.

In May 2002, this court decided *State v. Misquadace*, and held that a plea agreement standing alone is not a sufficient basis to depart from the sentencing guidelines. *Misquadace*, 644 N.W.2d at 72. The following month, Hutchinson filed a petition for postconviction relief in which he claimed that the Due Process Clause of the Fourteenth Amendment entitled him to the benefit of our decision in *Misquadace* and that he be resentenced. Hutchinson argued that the interests of justice entitled him to a modification of his sentence. The district court denied relief, and the court of appeals affirmed. We granted review on the limited issue whether, under *Fiore v. White*, our decision in *Misquadace* represents a clarification of Minn.Stat. § 244.09, as amended in 1997, so as to require that it be prospectively applied from the effective date of the amendment.

In *Misquadace* we stated:

> [B]ecause this holding establishes a new rule of law, retroactive application is not required. Given the purposes to be served, the extent of reliance by the parties and courts on previous standards, and the effect of retroactivity on the administration of justice, prospective application is appropriate. * * * We limit application of the ruling to this case and to pending and future cases.

*Misquadace*, 644 N.W.2d at 72 (internal citation omitted). We subsequently held that the rule announced in *Misquadace*

applied to a case that was on direct appeal at the time *Misquadace* was decided. *State v. Lewis,* 656 N.W.2d 535, 538 (Minn. 2003). We reasoned that an appeal suspends a judgment and deprives it of finality, and that the lack of finality continues until the appeal is dismissed or decided. *Id.* at 537–38. In *Lewis,* we quoted with approval the Supreme Court's definition of "final," for purposes of retroactivity, as " 'a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or * * * finally denied.' " *Id.* at 538 n. 2 (ellipsis in original) (quoting *Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). Under the approach in *Lewis,* there is no dispute that Hutchinson's conviction was final long before *Misquadace* was decided and that if *Misquadace* established a new rule of law that rule does not apply in Hutchinson's case.

Hutchinson argues (notwithstanding our express statement in *Misquadace* that we were establishing a new rule of law) that we merely clarified the intent of the legislature, as expressed in the 1997 statutory amendment, and that because that statute was in effect at the time his conviction became final, under *Fiore* it applies to him as a matter of due process. The state's position is that the *Misquadace* decision was based not on an interpretation of the statute, but on the general principles underlying the sentencing guidelines.

*Fiore* involved a Pennsylvania statute that criminalized the operation of a hazardous waste facility without a permit. 531 U.S. at 226, 121 S.Ct. 712. Fiore was convicted under the statute even though he possessed a permit, on the ground that he had deviated so dramatically from its terms that he nonetheless violated the statute. *Id.* at 226–27, 121 S.Ct. 712. After Fiore's conviction became final, the Pennsylvania Supreme Court interpreted the statute for the first time to make clear that Fiore's conduct was not within its scope. *Id.* at 226, 121 S.Ct. 712. The Pennsylvania courts declined to grant Fiore postconviction relief, and on federal habeas corpus review the United States Supreme Court granted certiorari to consider "when, or whether, the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on collateral review." *Id.* Because the Court was uncertain whether the Pennsylvania Supreme Court's decision represented a new rule of law, it certified the question to the state supreme court. *Id.* at 226, 228, 121 S.Ct. 712. The Pennsylvania court replied that its ruling "merely clarified the plain language of the statute" and constituted the proper statement of law at the time Fiore's conviction became final. *Id.* at 228, 121 S.Ct. 712. The Supreme Court ruled that the response to the certified question "made clear that retroactivity is not an issue" and also made clear that Fiore did not violate the statute and that his conviction violated due process. *Id.* at 226, 229, 121 S.Ct. 712. *See also Bunkley v. Florida,* 538 U.S. 835, 123 S.Ct. 2020, 155 L.Ed.2d 1046 (2003) (per curiam) (holding that state supreme court's determination that change it announced in definition of statutory term had evolved over time supported not applying the decision retroactively, but remanding for determination of due process question whether definitional change had evolved when defendant's conviction became final).

If we determine that *State v. Misquadace* announced a new rule of law and did not merely serve to clarify the 1997 sentencing statute, then Hutchinson's conviction will stand. We begin with an examination of the relevant statutory and case law that gave rise to the issue raised in the *Misquadace* case.

Minnesota Statutes § 244.09, subdivision 5 (2002), authorizes the sentencing guidelines commission to promulgate sentencing guidelines for the district court. This statute makes no reference to sentencing departures. Minnesota Statutes § 244.10 (2002), however, sets out certain procedures to be followed for deviations from the guidelines. No relevant changes in these statutory provisions were made from the time of their first enactment in 1978 until the 1997 amendment to section 244.09, subdivision 5.

In *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981), this court's first sentencing guidelines decision, we stated that a plea agreement attempting to limit sentence duration did not create a "substantial and compelling circumstance" justifying a departure from the guidelines. We concluded: "Only the court, acting in accordance with the Guidelines, and not the parties, has the authority to determine the appropriate sentence." *Id.* Fifteen years later in *State v. Givens*, 544 N.W.2d 774, 776–77 (Minn.1996), we were asked to establish a rebuttable presumption that if the defendant agrees to a departure as part of a plea bargain, the departure needs no additional justification. We stated that we believed the real question was whether a defendant may waive his or her right to be sentenced under the guidelines. *Id.* at 777. Noting settled law that courts will honor a defendant's lawful, intentional relinquishment of a known right or privilege, we held that "defendants may relinquish their right to be sentenced under the guidelines" so long as the waiver was knowing, intelligent, and voluntary. *Id.* We did not decide whether a plea agreement, standing alone, could justify an upward departure. We also overruled *State v. Garcia,* to the extent it was inconsistent with this holding. *Id.* at 777 n. 4.

In 1997, the legislature amended Minn. Stat. § 244.09, subd. 5, by adding the following paragraph:

Although the sentencing guidelines are advisory to the district court, the court shall follow the procedures of the guidelines when it pronounces sentence in a proceeding to which the guidelines apply by operation of statute. Sentencing pursuant to the sentencing guidelines is not a right that accrues to a person convicted of a felony; it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing.

Act of May 6, 1997, ch. 96, § 1, 1997 Minn. Laws 694, 695. In the same act that amended the statute, the legislature (1) prohibited the sentencing guidelines commission from amending the guidelines to include a plea agreement among the factors that should not be used as a reason for departure, and (2) directed the guidelines commission to "study the advisability of allowing a plea agreement to be used as a reason for a departure from a presumptive sentence." *Id.* § 11, 1997 Minn. Laws at 702. The act specifically provided that any modification regarding the use of plea agreements for departures would be effective only if the legislature approved it by law. *Id.* Following these legislative actions, neither the legislature nor the guidelines commission modified the sentencing guidelines to explicitly allow or prohibit a plea agreement standing alone as a departure factor.

■ In *Misquadace* we concluded:

We believe that the fairest reading of the 1997 amendment is that the legislature removed whatever "right" to sentencing under the guidelines was provided therein, but that the legislature did not want sentencing pursuant only to a plea agreement to be entirely prohibited until the sentencing guidelines commis-

sion analyzed how such sentencing fit within the entire system. *State v. Misquadace*, 644 N.W.2d at 70–71. We also noted that a 1999 amendment to the sentencing guidelines commentary "reflects some ambivalence in its explanation of why plea agreements are a difficult fit."[1] *Id.* at 71. We then went on to hold:

> We believe that the overriding principle in all sentencing is rationality, predictability, and consistency, and plea agreements can exist within the framework of the sentencing guidelines. Therefore, in order to abide by the guidelines' overriding principles, we conclude that negotiated plea agreements that include a sentencing departure are justified under the guidelines in cases where substantial and compelling circumstances exist. A plea agreement standing alone, however, does not create such circumstances in its own right.

*Id.* Finally, we recognized that the effect of our holding could discourage plea agreements and stated:

> It is for the legislature, however, to make the policy decision that sentencing pursuant to plea agreements alone does not seriously threaten the goal of rational and consistent sentencing. Until then, we will require courts to articulate substantial and compelling circumstances other than a plea agreement when departing from the guidelines.

*Id.* at 71–72.

■ The *Misquadace* opinion and the legal context in which that case was de-

cided are easily distinguished from *Fiore*, a case in which the court was merely clarifying the plain language of a criminal statute. The *Misquadace* holding was not based on an interpretation or clarification of Minn.Stat. § 244.09, subd. 5. We ruled as we did explicitly "in order to abide by the guidelines' overriding principles" of "rationality, proportionality, and consistency." *Misquadace*, 644 N.W.2d at 71. Indeed, we stated that these overriding principles apply in "*all* sentencing." *Id.* (emphasis added). Further, we stated that it is for the legislature to make the policy determination that sentencing pursuant to plea agreements does not threaten these goals, but until then we will require courts not to impose sentencing departures based on a plea agreement alone. *Id.* at 71–72.

Minnesota Statutes § 244.09, subdivision 5, as noted earlier, does not refer to sentencing departures, much less address the question whether a plea agreement is an appropriate justification for departure. Although the legislature in the 1997 amendment stated for the first time that sentencing under the guidelines is based on "state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing," these principles have been part of the guidelines' "Statement of Purpose and Principles" since their inception. Minnesota Sentencing Guidelines I.[2] These principles, not the language of the 1997 amendments, provid-

---

1. *See* Minnesota Sentencing Guidelines cmt. II.D.04. Commentary to the sentencing guidelines is advisory only and not binding on the courts. *Asfaha v. State*, 665 N.W.2d 523, 526 (Minn.2003).

2. Minnesota Sentencing Guidelines I provides:

> The purpose of the sentencing guidelines is to establish rational and consistent sen-

tencing standards which reduce sentencing disparity and ensure that sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history. Equity in sentencing requires (a) that convicted felons similar with respect to relevant sentencing criteria ought to receive similar sanctions, and (b) that convicted felons substantially different from a typical

ed the basis for the rule of law we announced in *Misquadace.*

We therefore conclude that the holding in *State v. Misquadace* was not based on an interpretation or clarification of Minn. Stat. § 244.09, subd. 5, but rather, as we stated then, established a new rule of law. Because we limited application of our holding to pending and future cases, the holding does not apply to Hutchinson's conviction, which was final before *Misquadace* was decided.

Affirmed.

case with respect to relevant criteria ought to receive different sanctions.
Minnesota Sentencing Guidelines II.D provides that when departing, the judge should take into substantial consideration the statement of purpose and principles in Minnesota Sentencing Guidelines I. This provision has also been in existence since the guidelines were first promulgated.