*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1682**

State of Minnesota,
Respondent,

vs.

Thomas Wayne Eilertson,
Appellant.

**Filed September 2, 2014
Reversed and remanded
Halbrooks, Judge**

Ramsey County District Court
File No. 62-CR-12-67

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Laura Rosenthal, Assistant County Attorney,
St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Hudson, Judge; and
Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges the district court's decision to assign a level-III severity

ranking to his 12 convictions of filing a fraudulent financing statement, an offense that is

unranked in the Minnesota Sentencing Guidelines. Because the district court failed to make findings in support of its assignment of a severity level, we reverse and remand.

## FACTS

Appellant Thomas Eilertson was charged in January 2012 with 46 counts of filing a fraudulent financing statement in violation of Minn. Stat. § 609.7475 (2010), and one count of filing a fraudulent instrument with the registrar of titles in violation of Minn. Stat. § 508.80 (2010). The complaint states that Eilertson's Minneapolis home was foreclosed on and sold at a sheriff's sale in 2009 and that around the same time, Eilertson and his wife began filing Uniform Commercial Code liens against individuals related to the foreclosure. Between 2009 and 2010, they filed more than $114 billion in liens through the Minnesota Secretary of State's Office, using the name "Blessings of Liberty" according to the complaint. The complaint alleges that the Eilertsons filed the liens "as a means to intimidate or seek revenge against people" and used "Blessings of Liberty" "to evade criminal or civil liability for their actions." The liens were filed against private attorneys and their law firms or companies that were involved with the Eilertsons' mortgage and foreclosure. Also targeted were several Hennepin County officials, including the sheriff, registrar of titles, examiner of titles, county attorney, assistant county attorneys, district court administrator, and chief judge.

The state offered Eilertson a plea agreement, under which he would plead guilty to one count for each alleged victim (12 total), the offenses would be sentenced at severity level III, and the state would agree to a downward dispositional departure if all liens were removed before sentencing. Eilertson completed a plea petition and pleaded guilty to the

12 counts.  The prosecutor examined Eilertson about the facts underlying each count, and the district court accepted Eilertson's plea.

At the sentencing hearing, the state argued that Eilertson had violated the plea agreement by failing to cooperate with the presentence investigation and by failing to remove the remaining liens.  The state recommended that the district court deem Eilertson's convictions to be level-III offenses because Eilertson agreed to that severity level and because Eilertson's offenses were similar in nature to level-III theft offenses. The district court agreed with the state's arguments, applied a level-III severity, and imposed 12 concurrent sentences, the longest being 23 months.  Eilertson challenges his sentence.

## DECISION

Although the Minnesota Sentencing Guidelines assign a severity level to most offenses, certain offenses are not ranked.  *State v. Kenard*, 606 N.W.2d 440, 442 (Minn. 2000); Minn. Sent. Guidelines II.A (2010).  "Offenses are generally left unranked because prosecutions for these offenses are rarely initiated, because the offense covers a wide range of underlying conduct, or because the offense is new and the severity of a typical offense cannot yet be determined."  Minn. Sent. Guidelines cmt. II.A.04 (2010).

When sentencing an unranked offense, the district court "shall exercise [its] discretion by assigning an appropriate severity level for that offense and specify on the record the reasons a particular level was assigned."  Minn. Sent. Guidelines II.A.  Among the factors the court may consider are:

the gravity of the specific conduct underlying the unranked offense; the severity level assigned to any ranked offense whose elements are similar to those of the unranked offense; the conduct of and severity level assigned to other offenders for the same unranked offense; and the severity level assigned to other offenders who engaged in similar conduct.

*Kenard*, 606 N.W.2d at 443; *see also* Minn. Sent. Guidelines cmt. II.A.04. This list is not exhaustive, and "[n]o single factor is controlling." *Kenard*, 606 N.W.2d at 443; *see also* Minn. Sent. Guidelines cmt. II.A.04.

Eilertson was convicted of 12 counts of filing fraudulent financing statements in violation of Minn. Stat. § 609.7475, subds. 2(2), 3(b)(1). Filing a fraudulent financing statement is an unranked offense.[1] The district court recognized this, and when announcing Eilertson's sentence, read the guidelines' procedure for assigning a severity level and cited *Kenard*. It stated:

> The Court did review the statutes previously cited by [the prosecutor]. I also reviewed the plea petition that had been agreed to by Mr. Eilertson and note that Mr. Eilertson had agreed that these crimes would be sentenced at a severity level three. I do find that severity level three is the appropriate severity level for these offenses, and so I have assigned them a severity level three in my sentencing here today.

We review the district court's severity level assignment for abuse of discretion. *State v. Bertsch*, 707 N.W.2d 660, 666 (Minn. 2006).

---

[1] Section 609.7475 went into effect in 2006. 2006 Minn. Laws ch. 260, art. 7, § 13, at 95. No cases involving this section were sentenced through 2012. Minn. Sent. Guidelines Comm'n, *Frequency and Severity of Unranked Offenses: Sentenced 1981-2012* 5 (Nov. 2013), *available at* http://mn.gov/sentencing-guidelines/images/2012Unranked Offenses.pdf.

4

The state argued at sentencing that filing a fraudulent financing statement is similar to three offenses with level-III severity: insurance fraud, defeating security on realty, and defeating security on personalty. It is unclear from the record whether the district court actually agreed with this argument because the district court said only that it had "reviewed" the statutes presented by the state. The district court did not address how the elements of the three offenses are similar to Eilertson's.

But even if the district court did agree with the state's argument, we are not convinced that the three offenses are sufficiently similar to justify a level-III severity ranking for Eilertson's offenses. Insurance fraud, defeating security on realty, and defeating security on personalty require significantly different mens rea than filing a fraudulent financing statement. Insurance fraud requires "intent to defraud for the purpose of depriving another of property or for pecuniary gain." Minn. Stat. § 609.611, subd. 1 (2010). Defeating security on realty requires "intent to impair the value of the property." Minn. Stat. § 609.615 (2010). And defeating security on personalty requires "intent to defraud." Minn. Stat. § 609.62, subd. 2 (2010). The felony offense of filing a fraudulent financing statement, on the other hand, requires "intent to influence or otherwise tamper with a juror or a judicial proceeding or with intent to retaliate against" an official related to a judicial proceeding. Minn. Stat. § 609.7475, subds. 2(2), 3(b)(1). The penalties for insurance fraud and defeating security on realty are based on the cost of the damage caused by the crimes, Minn. Stat. §§ 609.611, subd. 3, .615 (2010), and the severity level of all three offenses relied on by the state depends on whether the victim's losses were more than $5,000. *See* Minn. Sent. Guidelines IV (2010). The penalty for

5

filing a fraudulent financing statement is based solely on intent, with no dollar amount of loss required. Minn. Stat. § 609.7475, subd. 3(b)(1).

Filing a fraudulent financing statement is more similar to crimes such as stalking and harassment. The Minnesota statutes characterize stalking, harassment, and filing a fraudulent financing statement as "Public Misconduct or Nuisance" crimes. *See* Minn. Stat. §§ 609.687-.7495 (2010). Insurance fraud, defeating security on realty, and defeating security on personalty are listed as "Damage or Trespass to Property" offenses. *See* Minn. Stat. §§ 609.556-.621 (2010). Although these headnotes "are mere catchwords to indicate the contents of the section or subdivision" and "not part of the statute," Minn. Stat. § 645.49 (2010), they can aid courts' analysis. *See, e.g.*, *State v. Hodges*, 386 N.W.2d 709, 711 (Minn. 1986) (considering the offense's classification under "Damage or Trespass to Property" heading); *Thompson v. Comm'r of Pub. Safety*, 567 N.W.2d 280, 283 (Minn. App. 1997) (discussing the development of the headings of a particular statutory subdivision to decipher legislative intent), *review denied* (Minn. Sept. 25, 1997). Further, the mens rea requirement for felony filing a fraudulent financing statement is the same as that for felony aggravated stalking, Minn. Stat. § 609.749, subd. 3(a)(4), and felony violation of a harassment restraining order, Minn. Stat. § 609.748, subd. 6(d)(5). And, as with filing a fraudulent financing statement, that intent is what determines the severity of the crimes and the penalties. *See* Minn. Stat. §§ 609.748, subd. 6(d)(5), .749, subd. 3(a)(4).

In addition to reviewing the offenses raised by the state, the district court noted that Eilertson "had agreed that [his] crimes would be sentenced at a severity level three."

We have not reviewed a case in which the parties, as part of a plea agreement, stipulated to the severity level of an unranked offense. But in *State v. Misquadace*, the Minnesota Supreme Court considered "whether . . . a plea agreement, without more, can be the basis for a departure from the sentencing guidelines." 644 N.W.2d 65, 70 (Minn. 2002). The supreme court held that it cannot and explained as follows:

> We believe that the overriding principle in all sentencing is rationality, predictability, and consistency, and plea agreements can exist within the framework of the sentencing guidelines. Therefore, in order to abide by the guidelines' overriding principles, we conclude that negotiated plea agreements that include a sentencing departure are justified under the guidelines in cases where substantial and compelling circumstances exist. A plea agreement standing alone, however, does not create such circumstances in its own right. Rather, when reviewing a plea agreement that includes a sentencing departure, the court must determine whether the offense of conviction reflects any aggravating or mitigating circumstances that warrant a departure.

*Id.* at 71. The supreme court also stated that "[i]t is for the legislature . . . to make the policy decision that sentencing pursuant to plea agreements alone does not seriously threaten the goal of rational and consistent sentencing." *Id.* at 71-72. The same analysis applies to assigning severity levels to unranked offenses.

The district court is required to specify on the record its reasons for selecting a particular severity level, much like it must identify "substantial[] and compelling circumstances" before departing from the sentencing guidelines. Minn. Sent. Guidelines II.A, II.D. The parties can agree to a severity level and stipulate to facts that they believe support that level, but their agreement cannot be the reason for a particular sentence. *See State v. Rourke*, 773 N.W.2d 913, 919-21 (Minn. 2009) (distinguishing between facts that

7

must be proven beyond a reasonable doubt by the state and reasons that explain why the district court found substantial and compelling circumstances); *see also Spann v. State*, 704 N.W.2d 486, 494 (Minn. 2005) (concluding that "allowing a defendant to waive [via plea agreement] his right to appeal after trial conviction and sentencing is inconsistent with the court's role as an objective supervisor whose purpose includes maintaining the integrity of the judicial system"). To allow otherwise would circumvent the district court's role in deciding appropriate sentences and hamper the guidelines' goals.

By relying on Eilertson's plea agreement with the state to decide the severity level, the district court substituted the parties' discretion for its own. The plea agreement did not present any justification for a level-III ranking and therefore could not support the district court's decision. Because of this and our previous conclusion that the statutes presented by the state are distinguishable from filing a fraudulent financing statement, the record does not contain any rationale supporting Eilertson's sentence. We therefore reverse and remand for resentencing so that the district court may make the necessary findings to assign a severity level to Eilertson's unranked offenses.

**Reversed and remanded.**