**STATE of Minnesota, Respondent,**

v.

**Remedan Bekri MOHAMED, Appellant.**

No. A08–1832.

Court of Appeals of Minnesota.

Feb. 23, 2010.

Lori Swanson, Attorney General, Susan Gaertner, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, MN, for respondent.

Marie L. Wolf, Interim Chief Appellate Public Defender, Michael W. Kunkel, Assistant State Public Defender, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; PETERSON, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellant challenges his sentence of 67 months' imprisonment, which constitutes an upward durational departure from the presumptive guidelines sentence for malicious punishment of a child resulting in great bodily harm, Minn.Stat. § 609.377, subds. 1, 6 (2006). Appellant argues that the three aggravating factors on which the district court relied were improper bases for a sentencing departure. For the reasons set forth below, we affirm in part and remand in part.

## FACTS

In February 2007, appellant Remedan Mohamed brought his injured four-month-old son, H.M., to the emergency room at Regions Hospital. Mohamed gave three conflicting accounts of the cause of H.M.'s injuries. He initially told hospital staff that H.M. had fallen out of his bouncy chair. He then told a hospital social worker that H.M. had fallen off of the couch. When he spoke with Dr. Mark Hudson at the hospital, Mohamed reported that, while he was preparing H.M.'s formula, H.M. had fallen out of Mohamed's arms. Mohamed also gave this latter explanation to St. Paul Police Officer Wanda LeBlanc a few days later.

Mohamed was charged with first-degree assault, a violation of Minn.Stat. § 609.221, subd. 1 (2006). Pursuant to a plea agreement, Mohamed pleaded guilty to malicious punishment of a child resulting in great bodily harm, a violation of Minn.Stat. § 609.377, subds. 1, 6. At the guilty-plea hearing, Mohamed testified that H.M. began crying after falling from Mohamed's grasp. According to Mohamed, after picking up H.M., Mohamed shook H.M. at least two times with an

excessive or unreasonable amount of force, and H.M. later had a seizure. Mohamed waived his Sixth Amendment right to a sentencing jury and stipulated to the existence of three aggravating factors: (1) the victim was particularly vulnerable because of his age; (2) Mohamed was in a position of authority when he committed the offense; and (3) the offense occurred within H.M.'s zone of privacy. Mohamed also agreed to a sentence of 67 months' imprisonment, an upward durational departure from the presumptive guidelines sentence. But he reserved the right to move for a downward dispositional departure to a stayed sentence and probation, rather than an executed sentence.

At the sentencing hearing, the parties presented evidence addressing their respective positions regarding sentencing. Dr. Hudson, a consultant to the pediatric intensive care physician on duty when H.M. arrived at the hospital, testified that Mohamed's explanations were inconsistent with H.M.'s symptoms and injuries. According to Dr. Hudson's diagnosis, H.M. suffered a brain injury evident by seizures, an altered mental state, bleeding around the brain, and extensive retinal hemorrhaging. Dr. Hudson opined that these injuries "aren't seen in children who fall or who have minor trauma. They, in fact, are very strongly correlated with abusive head trauma[.]" Dr. Hudson described H.M.'s injuries as "high force injuries" observed when children have been "shaken violently" or are "slammed or thrown into objects." He observed that these types of injuries also can be caused by a fall from a height of one story or more. Additionally, Dr. Hudson testified that, prior to sustaining these injuries, H.M. had sustained a broken clavicle and a fractured leg.

Regarding H.M.'s medical condition at the time of the sentencing hearing, Dr. Hudson testified:

Clearly, he has lost significant portions of his brain. They have died as a result of the trauma. His treating physicians at this point aren't sure whether he sees. He's not mobile. He can't walk. His communication is extremely limited. He wears orthotic devices to keep him from getting ... contractures.... [H]e's unable to take enough nutrition orally to maintain his growth. [He requires] a ... gastric tube, such that nutrition can be given to him without him having to eat it.

As to H.M.'s prognosis, Dr. Hudson testified that, "[c]learly, he is not going to recover. He is in no way going to be a 'normal child.'" Dr. Hudson also opined that H.M. will require lifetime services and likely will have a shortened lifespan.

The district court denied Mohamed's motion for a downward dispositional departure and imposed an executed sentence of 67 months' imprisonment, an upward durational departure based on the agreed-upon aggravating factors. This appeal followed.

**ISSUE**

Did the district court abuse its discretion by imposing a sentence that is an upward durational departure based on impermissible aggravating factors?

**ANALYSIS**

We will not disturb a district court's decision to depart from the sentencing guidelines absent a clear abuse of discretion. *State v. Misquadace,* 644 N.W.2d 65, 68 (Minn.2002). When a district court departs from the sentencing guidelines, it must articulate a substantial and compelling reason to justify the departure. *State v. Schmit,* 601 N.W.2d 896, 898 (Minn.1999). "[A] plea agreement—standing alone—is not a sufficient basis to depart from the sentencing guidelines."

*Misquadace,* 644 N.W.2d at 72. Although, without more, the terms of a negotiated plea agreement do not constitute substantial and compelling reasons that the district court may rely on to justify a departure, such reasons may be magnified by a party's admissions in the plea agreement and at the guilty-plea hearing. *State v. Pearson,* 479 N.W.2d 401, 405 (Minn.App. 1991), *review denied* (Minn. Feb. 10, 1992). When determining whether to depart, the district court must consider whether the defendant's conduct was significantly more or less serious than that typically involved in such crimes. *State v. Cermak,* 344 N.W.2d 833, 837 (Minn.1984). The presence of a single aggravating factor is sufficient to uphold an upward departure. *See State v. O'Brien,* 369 N.W.2d 525, 527 (Minn.1985). But the district court's reasons for departing from the presumptive guidelines sentence must not be an element of the offense for which the sentence is imposed. *State v. Jones,* 745 N.W.2d 845, 849 (Minn.2008).

Mohamed was convicted of violating Minn.Stat. § 609.377, subd. 1, which provides that "[a] parent, ... who, by an intentional act ... with respect to a child, evidences unreasonable force or cruel discipline that is excessive under the circumstances is guilty of malicious punishment of a child[.]" Under this statute, the term "child" is defined as any person under the age of 18. Minn.Stat. § 609.376, subd. 2 (2006). If the punishment causes "great bodily harm," the statutory maximum potential penalty for a parent is ten years' imprisonment. Minn.Stat. § 609.377, subd. 6.

■ The presumptive guidelines sentence for Mohamed is 48 months' imprisonment. Minn. Sent. Guidelines IV–V (2006). The district court imposed an executed sentence of 67 months' imprisonment, an upward durational departure, based on the three aggravating factors to which the parties stipulated. An upward-departure sentence may be imposed only when two distinct requirements are met: "(1) a factual finding that there exist one or more circumstances not reflected in the ... guilty plea, and (2) an explanation by the district court as to why those circumstances create a substantial and compelling reason to impose a sentence outside the range on the grid." *State v. Rourke,* 773 N.W.2d 913, 919 (Minn.2009). Regarding the first requirement, the accused is entitled to a jury trial on the additional facts supporting the departure. *Id.* (citing *Blakely v. Washington,* 542 U.S. 296, 301, 303–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2005)). The second requirement falls to the sentencing court, which must explain how the additional facts found by the jury justify an upward departure. *Id.* at 919–20. Mohamed waived his rights to a jury trial on the facts supporting the upward departure and admitted the facts supporting the aggravating factors set forth in the plea agreement. The district court, in exercising its discretion, concluded that an upward departure was appropriate in light of those admitted facts and the additional medical evidence regarding the vulnerability of the victim and the severe and permanent injuries that he sustained from Mohamed's criminal conduct. Because the district court was acting as both the factfinder and the sentencing court, the respective roles and distinct requirements defined in *Rourke* have been met.

■ Mohamed asserts that his sentence must be reversed because not one of the stipulated aggravating factors provides a permissible basis for an upward durational departure. Mohamed argues that H.M.'s particular vulnerability because of his age was an inappropriate factor for consideration because "the legislature has already taken into account ... that the

victims of this offense would necessarily be children." Generally, a victim may be considered "particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which is known or should have been known to the offender." *State v. Stanke*, 764 N.W.2d 824, 827 (Minn.2009) (quotation omitted). But because an element of the offense at issue here is that the victim is a child, Minn.Stat. § 609.377, subd. 1, further analysis is necessary to determine whether a victim's particular vulnerability because of infancy is a permissible aggravating factor.

The legislature has taken the victim's age into account to the extent that it recognizes the special vulnerability of those under the age of 18. But we hold that, given the broad spectrum of physical development captured in this 18–year time span, the legislature's recognition does not preclude consideration of the victim's infancy as an aggravating factor here. The age element in the statute does not account for the particular vulnerability of H.M., an extremely young victim who, because of his early stage of development, is incapable of perceiving danger, fleeing or shielding himself from harm, seeking help, or reporting the abuse. Indeed, H.M.'s vulnerability is absolute. He is particularly vulnerable among the broad class of child victims who are covered by the statute.

Mohamed maintains that the Minnesota Supreme Court's holding in *Taylor v. State*, 670 N.W.2d 584 (Minn.2003), precludes consideration of H.M.'s particular vulnerability here. We disagree. The *Taylor* court rejected the imposition of an upward durational departure for first-degree criminal sexual conduct, a violation of Minn.Stat. § 609.342, subd. 1(a) (2002) (sexual contact with person under 13 years of age). 670 N.W.2d at 585. Although the upward departure was based on the victim's vulnerability due to age, which was three years old, the *Taylor* court concluded that the increase in sentence durations that have been mandated by statute as part of a comprehensive legislative effort to manage sex offenders already reflects the legislature's consideration of the greater vulnerability of a young victim of sexual assault. *Id.* at 589–90. The *Taylor* court's conclusion was expressly based on the "framework of risk management tools" for sex offenders that had been legislatively developed in recent decades. *Id.* at 590. No such legislative history or risk-management framework accompanies the malicious-punishment statute at issue here.

The particular vulnerability attributable to H.M.'s infancy is akin to that of victims who are particularly vulnerable because of conditions associated with their advanced age, their physical or mental disability, their intoxication or unconsciousness, or the presence of children. Each of these conditions, like infancy, impairs the victim's ability to seek help, fight back, or escape harm. We have held that an upward departure from the presumptive sentence for second-degree felony murder and kidnapping was supported by the particular vulnerability of the victim, an elderly woman with deteriorating health, because her recent hip surgery rendered her "basically immobile." *State v. Rodriguez*, 505 N.W.2d 373, 377 (Minn.App.1993), *review denied* (Minn. Oct. 19, 1993). There, the victim's particular vulnerability was supported by the district court's finding that the offender had left the victim to die, knowing that "she could not summon help or escape on her own." *Id.* In *State v. Dalsen*, we also affirmed an upward departure based on the particular vulnerability of the victim of first-degree criminal sexual conduct when that vulnerability was increased by the presence of an infant in the next room, which impaired the victim's freedom to escape and resulted in

"incapacitation." 444 N.W.2d 582, 584 (Minn.App.1989), *review denied* (Minn. Oct. 13, 1989). And the victim's particular vulnerability attributable to muscular dystrophy supported a double upward durational departure from the presumptive sentence for first-degree burglary. *State v. Graham,* 410 N.W.2d 395, 396–97 (Minn.App.1987), *review denied* (Minn. Sept. 30, 1987); *see also State v. Gettel,* 404 N.W.2d 902, 906 (Minn.App.1987) (affirming upward durational departure based in part on particular vulnerability of victim who was intoxicated and sleeping when sexually assaulted), *review denied* (Minn. June 26, 1987). In each of these cases, as here, because the elements of the offense failed to account for the victim's particular vulnerability, an upward departure was permissible.

Here, any victim under the age of 18 can satisfy the age element of the offense, including those who are physically mature enough to defend themselves, to flee, and to communicate with others to secure help. The district court concluded, however, that Mohamed's commission of the offense against H.M. was significantly more serious and H.M. was particularly more vulnerable than he would have been if H.M. were an older child. Under the particular facts and circumstances presented here, this distinction, based on the extreme vulnerability of the victim, is legally sound.

Mohamed next argues that, because the legislature enacted Minn.Stat. § 609.377, subd. 4 (2006), for violent acts against a child *under age four* that "cause[ ] bodily harm to the head, eyes, neck, or otherwise cause[ ] multiple bruises to the body" but declined to include a similar age provision in Minn.Stat. § 609.377, subd. 6, the "great-bodily-harm" subdivision at issue here, we should discern legislative intent to treat malicious punishment of an infant resulting in severe and permanent injuries as no more serious than malicious punishment causing "great bodily harm" committed against an older child. We are not persuaded. Rather than representing the legislature's view that harm to a younger child is no more serious than harm to an older child, the legislature has recognized in subdivision 4 the particular vulnerability of children under age four by criminalizing punishment resulting in harm that does not rise to the level of the "great bodily harm" required by subdivision 6, Mohamed's offense of conviction. But this specific recognition of vulnerability attributable to children under age four for one offense does not support a conclusion that the legislature has already accounted for the particular vulnerability accompanying *infancy* for a child victim of malicious punishment resulting in "great bodily harm." Rather, the legislature has determined that acts causing "great bodily harm" are prohibited against all children, whereas acts causing a lesser degree of bodily harm are prohibited against children under age four. Because the legislature has not included the particular vulnerability of the extremely young as an element of Mohamed's offense of conviction, the district court did not abuse its discretion when it determined that H.M.'s particular vulnerability resulting from his infancy is an aggravating factor that supports an upward durational departure.

 The state does not contest, and we agree, that the other two grounds relied on for an upward durational departure are inapplicable here. Because only a person in a position of trust—a parent, legal guardian, or caretaker—can commit the offense of malicious punishment of a child, Minn.Stat. § 609.377, subd. 1, departing based on this trust relationship improperly relies on an element of the offense. *See Jones,* 745 N.W.2d at 849 (element of underlying offense may not be basis for sentencing departure). Reliance on the zone

of privacy in which the offense was committed also was improper. Because Mohamed and H.M. shared a home, the zone-of-privacy aggravating factor is limited to a bedroom within their home. *State v. Griffith*, 480 N.W.2d 347, 351 (Minn.App. 1992), *review denied* (Minn. Mar. 19, 1992), *superseded by statute on other grounds*, Minn.Stat. § 609.341, subd. 9 (2006). And the record is devoid of any evidence that Mohamed committed the offense in H.M.'s bedroom.

 Because we conclude that the district court relied on a combination of proper and improper aggravating factors in making its sentencing decision, we must determine whether it is necessary to remand this case to the district court to permit resentencing. When deciding under these circumstances whether to affirm or remand, "we must determine whether the district court would have imposed the same sentence absent reliance upon the improper aggravating factor[s]." *Stanke*, 764 N.W.2d at 828 (citing *State v. Rodriguez*, 754 N.W.2d 672, 682 (Minn.2008)). "In doing so, we consider the weight given to the invalid factor[s] and whether any remaining factors found by the court independently justify the departure." *Id.* We will affirm the sentence imposed by the district court only if we can conclude from the record that the district court would have imposed the same sentence absent its reliance on the improper aggravating factors. *Id.*

The evidence received at the contested sentencing hearing focused on Mohamed's request for a dispositional departure, which the district court denied. At the conclusion of the hearing, the district court stated, "What you have done to your child ... represents an inappropriate exercise of authority over someone who is vulnerable. This child will experience its own torture of a life diminished for the rest of its life." The district court then imposed a sentence of 67 months' imprisonment, an upward durational departure based on the three stipulated aggravating factors. The district court's presentence statement appears to reference the valid aggravating factor, H.M.'s particular vulnerability, and one invalid factor, Mohamed's abuse of his position of trust. From our careful review of the record, we cannot discern the weight given to the invalid factors as compared to the valid factor. Consequently, the record does not permit us to conclude that the district court would have imposed the same sentence based on only the valid aggravating factor. We, therefore, remand to permit the district court to determine whether the same or a different sentence should be imposed based on the single aggravating factor of the victim's particular vulnerability.

## DECISION

The district court did not abuse its discretion by relying on the aggravating factor of particular vulnerability of the victim based on the victim's infancy when deciding to depart upward from the presumptive guidelines sentence for malicious punishment of a child resulting in great bodily harm, Minn.Stat. § 609.377, subds. 1, 6. But the remaining two aggravating factors to which the parties stipulated as grounds for an upward departure are invalid based on the offense of conviction at issue here. Because the record does not permit us to determine whether the district court would have imposed the same sentence absent its reliance on the improper aggravating factors, we remand for the district court's determination of whether resentencing is warranted in light of our decision.

**Affirmed in part and remanded in part.**