*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1949**

State of Minnesota,
Respondent,

vs.

Jonathan Lee Closner,
Appellant.

**Filed August 25, 2014
Affirmed
Chutich, Judge**

Goodhue County District Court
File No. 25-CR-13-131

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Stephen N. Betcher, Goodhue County Attorney, Christopher Schrader, Assistant County Attorney, Red Wing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Erik I. Withall, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Ross, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Jonathan Closner contends that the district court abused its discretion by

sentencing him to an upward durational sentencing departure after he pleaded guilty to

attempted second-degree murder because (1) he did not properly waive his right to a *Blakely* hearing and (2) the district court improperly relied on facts that were essential elements of attempted second-degree intentional murder and of charges that were dismissed by the state. Because Closner validly waived his right to a *Blakely* hearing and the district court did not abuse its discretion in finding that the victim was particularly vulnerable during the attack, we affirm.

## FACTS

In January 2013, appellant Jonathan Closner entered his house in Zumbrota in violation of an order for protection obtained against him by his wife. Closner suspected that his wife was having an intimate relationship with D.Y. When Closner entered the house, he saw D.Y.'s baseball hat. Closner then went to his toolbox to get a hammer. While carrying the hammer, he went to the bedroom and saw D.Y. and his wife in bed. Closner observed that D.Y. was asleep before he hit D.Y. in the head multiple times with the hammer.

As a result of this attack, doctors had to remove part of D.Y.'s skull, amputate part of his brain, and replace part of his skull with a titanium prosthesis. The chief resident of the neurosurgery department said that "this was one of the most serious head injuries he's seen for the past seven years." D.Y. spent two months in the hospital, two months in a rehabilitation center, and attends "occupational therapy, physical therapy, and speech therapy three times a week for three hours a day, on top of working on it at home, so [he] can learn to talk again, read again, move, and use [his] right arm."

The state charged Closner with attempted first-degree premeditated murder, attempted first-degree felony murder, attempted second-degree intentional murder, first-degree assault, first-degree burglary, second-degree assault, and violation of an order for protection. *See* Minn. Stat. § 518B.01, subd. 14(a); Minn. Stat. § 609.17, subd. 1; Minn. Stat. § 609.185(a)(1), (3); Minn. Stat. § 609.19, subd. 1(1); Minn. Stat. § 609.221, subd. 1; Minn. Stat. § 609.222, subd. 1; Minn. Stat. § 609.582, subd. 1(c) (2012). Closner pleaded guilty to attempted second-degree intentional murder, and the state dismissed the six remaining charges as part of the plea agreement.

The plea agreement stipulated that Closner would serve 212 months' imprisonment, an upward durational departure of 16 months. As part of the plea agreement, Closner waived his right to a jury finding facts supporting the aggravating sentencing factors and admitted that the following factors were present in his case:

> A. That the victim suffered a serious permanent injury as a result of assault;
> B. That the victim was particularly vulnerable at the time the defendant assaulted him;
> C. That the victim was treated with particular cruelty at the time of the assault; and,
> D. That the offense was committed in a location where the victim had [an] expectation of privacy, that there was a zone of privacy, that it was a protected area in the sense that there was an Order For Protection in place.

The district court accepted Closner's guilty plea, found that the four agreed-upon aggravating sentencing factors were present in his case, and imposed the agreed-upon sentence of 212 months' imprisonment. This appeal followed.

3

# D E C I S I O N

## I.     *Blakely* Waiver

Closner asserts that the district court improperly sentenced him to an upward durational departure because he did not properly waive his right to a *Blakely* hearing on the aggravating sentencing factors used by the district court to support the departure. *See Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). The state responds, and we agree, that Closner waived his right to a *Blakely* hearing orally on the record and also by reviewing and signing a *Blakely*-hearing written waiver discussing the aggravating sentencing factors before the plea hearing.

Under the Supreme Court's holding in *Blakely v. Washington*, a criminal defendant has a right to a jury trial on facts used by a district court to support an upward sentencing departure. 542 U.S. at 303, 124 S. Ct. at 2537; *State v. Shattuck*, 689 N.W.2d 785, 786 (Minn. 2004) (applying *Blakely* in Minnesota). A defendant's waiver of a *Blakely* hearing "must be supported in the same manner as a waiver of a jury trial on the elements of the offense; knowingly, voluntarily, and intelligently." *State v. Barker*, 705 N.W.2d 768, 773 (Minn. 2005). We review the validity of a *Blakely*-hearing waiver de novo. *See, e.g.*, *State v. Dettman*, 719 N.W.2d 644, 651–52 (Minn. 2006) (applying de novo review to purported *Blakely* waiver).

The record supports the district court's acceptance of Closner's *Blakely*-hearing waiver. At the beginning of the plea hearing, Closner's attorney explained that Closner would be pleading guilty to attempted second-degree murder, the state would be dismissing the remaining charges, and Closner had agreed to a sentence of 212 months'

4

imprisonment, "an upward durational departure of approximately 16 months." The prosecutor then specified on the record that the plea agreement called for Closner to agree that D.Y. "suffered a serious permanent injury as a result of the assault"; that D.Y. was "particularly vulnerable" at the time of the assault; that Closner treated D.Y. with "particular cruelty" during the assault; and that "the offense was committed in a location where [D.Y.] had [an] expectation of privacy."

Before establishing the factual basis for attempted second-degree murder, Closner's attorney stated to Closner, "And you understand that [the] agreed prison sentence is approximately 16 months over and above what is typically called for under the sentencing guidelines for this offense, were you to be convicted of it, with one criminal history point; is that correct?" Closner responded, "Yes."

After establishing the factual basis for attempted second-degree murder, Closner admitted that he "acted with particular cruelty"; that D.Y. was "asleep" and "particularly vulnerable" at the time of the attack; that he "entered the residence after having been court ordered not to do so"; and that D.Y. "sustained very serious grievous bodily injuries because of [his] conduct that day that is more likely than not going to affect [D.Y.] the rest of his life." The following exchange then took place between Closner and his attorney about his *Blakely*-hearing rights:

> Q: Now, with regards to the aggravating factors that [the prosecutor] and I have discussed on the record, you understand that, if we were to go to trial, those aggravating factors would be the subject of a separate sentencing trial. We discussed that, correct?
> A: Yes.

5

Q: And you understand that the State would have to prove to the jury, and that jury would have to be unanimous in its verdict, that the State had proven those aggravating factors by proof beyond a reasonable doubt. Do you understand that?
A: Yes.
Q: You understand that by admitting to engaging in those acts and that you have conducted yourself in such a way to have committed this offense with those aggravating factors being present that you're giving up your right to have that separate sentencing trial with regards to the aggravating factors; is that correct?
A: Yes.
Q: Now, all of those trial rights that we've discussed, your right to remain silent, your right to be presumed innocent, the right to a unanimous verdict in the jury, your right to challenge the State's evidence with an attorney to assist you, your right to present evidence in your own defense at the sentencing phase of the trial, you understand you have all those rights with regards to that sentencing phase of the trial on the issue of aggravating factors; is that correct?
A: Yes.
Q: You are now agreeing to those aggravating factors being present here today; is that correct?
A: Yes.
Q: And you're doing so freely and voluntarily?
A: Yes.
Q: And you're giving up your right to have that separate sentencing trial; is that correct?
A: Yes.
Q: And you're relieving the State of its burden of having to prove those aggravating factors by proof beyond a reasonable doubt to a trial by jury?
A: Yes.
Q: Now, I am turning your attention to this document entitled petition regarding aggravated sentence. Do you recognize this document?
A: Yes.
Q: This is a two-page document that you and I discussed prior to our appearance here today; is that correct?
A: Yes.
Q: And we went through this document line by line; is that correct?
A: Yes.

Q: And after we did so, you signed the document; is that correct?
A: Yes.
. . .
Q: Do you have any questions of what we've done here today?
A: No.
Q: And all your decisions that you made today, are they free and voluntary?
A: Yes.

The plea hearing as a whole demonstrates that Closner understood and waived his right to a *Blakely* hearing based on the petition he signed before the hearing; that both his attorney and the prosecutor explained the plea agreement, the upward durational sentencing departure, and the aggravating sentencing factors on the record; and that Closner orally waived his rights to a *Blakely* hearing "knowingly, voluntarily, and intelligently" on the record. *See Barker*, 705 N.W.2d at 773.

Closner contends that the district court improperly relied on Closner's factual admissions given before he orally waived his right to a *Blakely* hearing to support the aggravating sentencing factors. Closner relies on Minnesota Rule of Criminal Procedure 26.01, subdivision 1(2)(b), and *State v. Dettman*, 719 N.W.2d at 654, to support this argument. Minnesota Rule of Criminal Procedure 26.01, subdivision 1(2)(b), states:

> Where the prosecutor seeks an aggravated sentence, the defendant, with the approval of the court, may waive a jury trial on the facts in support of an aggravated sentence provided the defendant does so personally, in writing or on the record in open court, after being advised by the court of the right to a trial by jury, and after having had an opportunity to consult with counsel.

The record shows that the district court complied with the requirements of rule 26.01, subdivision 1(2)(b), because Closner signed a *Blakely*-hearing-waiver petition before the plea hearing and also orally waived his right to a *Blakely* hearing during the plea hearing.

In *Dettman*, the supreme court held "that a defendant must expressly, knowingly, voluntarily, and intelligently waive his right to a jury determination of facts supporting an upward sentencing departure before his statements at his guilty-plea hearing may be used to enhance his sentence." 719 N.W.2d at 650–51. Contrary to Closner's statements in his brief, *Dettman* does not hold that "a separate factual basis must be established following the *Blakely*-waiver." Instead, it holds that a defendant's factual admissions from a plea hearing can be used to support an upward sentencing departure as long as the defendant has "expressly, knowingly, voluntarily, and intelligently" waived his right to a *Blakely* hearing. *Id.* at 650–51, 655 ("[I]n the absence of a knowing waiver of his Sixth Amendment right to a jury determination of facts supporting an upward sentencing departure, Dettman's statements at his plea hearing cannot be used as admissions to enhance his sentence.").

Closner also contends that *Miranda* waivers and *Blakely* waivers have the same legal requirements, but no Minnesota law exists to support his assertion. Because a *Miranda* waiver serves a different purpose than a *Blakely* waiver—to protect against self-incrimination—we are not persuaded by this contention. *See Miranda v. Arizona*, 384 U.S. 436, 469, 86 S. Ct. 1602, 1625 (1966). We hold that Closner "expressly, knowingly, voluntarily, and intelligently" waived his right to a *Blakely* hearing. *See Dettman*, 719 N.W.2d at 650–51.

8

## II.    Upward Sentencing Departure

Closner contends that the district court abused its discretion by supporting the upward durational sentencing departure using facts that were essential elements of attempted second-degree intentional murder and of charges that were dismissed by the state. Because the district court properly found that D.Y. was particularly vulnerable during the attack, we hold that the district court did not abuse its discretion.

We review the district court's decision to impose a sentencing departure for an abuse of discretion. *State v. Jackson*, 749 N.W.2d 353, 356–57 (Minn. 2008). A district court abuses that discretion when insufficient evidence exists in the record to justify a departure or when the district court bases the departure on improper considerations. *See id.* at 357. "[I]f a district court's reasons for a departure are stated on the record, an appellate court must determine whether the stated reasons justify the departure." *State v. Grampre*, 766 N.W.2d 347, 351 (Minn. App. 2009), *review denied* (Minn. Aug. 26, 2009). We must determine whether the reasons provided are legally permissible and factually supported by the record. *See State v. Edwards*, 774 N.W.2d 596, 601–02 (Minn. 2009).

A district court can depart from a presumptive-guidelines sentence if it finds that substantial and compelling circumstances warrant the departure. *State v. Misquadace*, 644 N.W.2d 65, 69 (Minn. 2002). Substantial and compelling circumstances exist when "the facts of a particular case [are] different from a typical case" of the same type. *Taylor v. State*, 670 N.W.2d 584, 587–88 (Minn. 2003). Departures cannot be based on elements of the underlying crime, on uncharged or dismissed offenses, on conduct for

9

which the defendant was acquitted, or on conduct for which the defendant was separately convicted. *State v. Jones*, 745 N.W.2d 845, 849 (Minn. 2008). The presence of a single aggravating factor is sufficient to support an upward departure. *State v. Mohamed*, 779 N.W.2d 93, 97 (Minn. App. 2010), *review denied* (Minn. May 18, 2010).

Applying these principles, we hold that the district court properly relied on the particular vulnerability of the victim as an aggravating sentencing factor to support Closner's upward sentencing departure because D.Y. was asleep when Closner attacked him.[1] The district court may impose an upward sentencing departure when "[t]he victim was particularly vulnerable due to . . . reduced physical or mental capacity, and the offender knew or should have known of this vulnerability." Minn. Sent. Guidelines 2.D.3.b(1) (2012). A particular vulnerability "impairs the victim's ability to seek help, fight back, or escape harm." *Mohamed*, 779 N.W.2d at 98. Minnesota law recognizes that victims are particularly vulnerable when they are asleep because they are unable to immediately run away or defend themselves against an aggressor. *See State v. Yaritz*, 791 N.W.2d 138, 145 (Minn. App. 2010), *review denied* (Minn. Feb. 23, 2011); *State v. Skinner*, 450 N.W.2d 648, 654 (Minn. App. 1990), *review denied* (Minn. Feb. 28, 1990).

It is undisputed that D.Y. was asleep at the time that Closner attacked him. Because D.Y. was asleep at the time of the attack, he had no opportunity to react to Closner entering the home, approaching him, and repeatedly pounding his head with a hammer. *See Mohamed*, 779 N.W.2d at 98. Because only one aggravating factor is needed to support this upward sentencing departure of sixteen months, we need not

---

[1] In his brief, Closner did not address this basis for departure.

10

address the district court's reliance on the three other factors. *See id.* at 97. For these reasons, we conclude that the district court did not abuse its discretion by relying on D.Y.'s particular vulnerability of being asleep to support the agreed-upon upward sentencing departure.

**Affirmed.**