**STATE of Minnesota, Respondent,**

v.

**Robert W. JENO, Appellant.**

**No. CX–84–421.**

Court of Appeals of Minnesota.

July 24, 1984.

Hubert H. Humphrey, III, Atty. Gen., Steven H. Alpert, Rice County Atty., Faribault, for respondent.

C. Paul Jones, Public Defender, Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by WOZNIAK, P.J., and SEDGWICK and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Defendant pleaded guilty to criminal sexual conduct in the first degree. The trial court doubled the presumptive sentence and committed him to the custody of the Commissioner of Corrections for a period of 130 months. At the time of the offense, defendant was on probation for a conviction of criminal sexual conduct in the fourth degree. He appeals from the trial court's sentence alleging no substantial or compelling reasons exist for an upward departure.

We affirm.

## FACTS

On June 17, 1983 defendant Jeno, aged 19, spent most of the day drinking beer in bars and at a street dance in Faribault, Minnesota. When the bars closed at about 1:00 a.m. on June 18, 1983, Jeno and a group of 4 or 5 male and female drinking companions began walking home through a residential portion of Faribault. At about the same time the victim, a 25 year old female, left a different bar with a female friend and walked her home. On her way back from her friend's home and to her home the victim encountered Jeno and his group. Jeno was walking behind the others and, as the victim passed by, turned and followed her without the others noticing.

When the victim reached the end of a bridge, Jeno grabbed her and dragged her down into a gully saying he intended to sexually assault her. The victim initially offered resistance, yelling "let go" and trying to hit him in the face. Jeno responded by hitting her in the nose with his fist. The victim testified that Jeno seemed to have no difficulty speaking or moving and showed no signs of being intoxicated.

When they were in the gully, about 5 or 6 feet below the street level, Jeno ordered the victim to take off her clothes. She refused and Jeno then hit her about 10 times in her face with his fists. When he stopped hitting her, he reached down to tear off her shirt but she stopped him and took off her T-shirt and bra herself. He then had her pull down her pants and panties and had her lay down in the gully. He then got on top of her and unsuccessfully attempted to have intercourse with her. While he was making his attempt, Jeno bit her in the neck very hard. The victim told Jeno that Jesus loved him and that he would be forgiven for his acts. Jeno told her to shut up and gave her directions on what he wanted her to do.

Jeno then got up and decided he wanted to move further down the gully. The victim pretended she had fainted hoping Jeno would abandon his assault, but Jeno kept trying to pull her up off the ground. Both

then got up and started moving down the gully. The victim by that time had a hard time seeing because both of her contact lenses had come out. As they moved down the gully, they both fell over a log. Jeno wanted the victim to go further down into the bushes but the victim refused. The victim asked him if she could pray. As she knelt on the ground, Jeno kicked her in the back and then began a second attempt at intercourse.

As Jeno prepared for his second attempt, he roughly grabbed or pulled on the victim's breast. The victim complained that she was thirsty and Jeno said "Well, I can take care of that" and forced the victim to perform oral sex upon him. After only a few moments of oral sex Jeno decided he was ready for his second attempt at intercourse and had the victim lay down. He was not successful. Jeno instead put his finger into the victim's vagina and pushed very hard, digging around and causing the victim pain.

Jeno then wanted more oral sex. During the act the victim was wretching and had difficulty breathing. Jeno said he would not stop until she threw up even though she was asking him to stop. When he did stop, Jeno demanded that the victim follow him as he went up the path to the road. She followed him up the path to the road, but did not follow him as he went across the bridge. When he realized she was not behind him, he started coming back for her but was scared off by a car.

The victim got a ride from a passerby to the police station. The police brought her to a hospital where she spent over 24 hours receiving treatment. As the victim had walked up the path, before she escaped, she thought she was involuntarily urinating. At the hospital she discovered that she was bleeding from her vagina.

Jeno was charged with Criminal Sexual Conduct in the First Degree and with Kidnapping. Jeno claims to have no recollection of the rape except that he remembers seeing the victim taking her clothes off. He claims that he blacked out after drinking and after taking some drugs. He is satisfied, however, that he committed the alleged acts.

## ISSUE

Do substantial and compelling reasons exist to justify the trial court's departure upward to double defendant's presumptive sentence for criminal sexual conduct in the first degree?

## ANALYSIS

■ The presumptive sentence should apply in most cases. A trial court nonetheless has discretion to depart from the presumptive sentence when the offense involved substantial and compelling circumstances. *State v. Garcia*, 302 N.W.2d 643 (Minn.1981).

■ The sentencing guidelines list a number of reasons for departing upward from a presumptive sentence. Particular cruelty is one of the reasons listed in the sentencing guidelines for departing upward. Section II.D.103.2.b.(2); *State v. McClay*, 310 N.W.2d 683 (Minn.1981). That reason and any other reason given for departing must set the defendant's conduct apart from the typical conduct constituting the offense. *State v. Peterson*, 329 N.W.2d 58 (Minn.1983). It follows that when a crime is of its nature cruel, the defendant's conduct must show something more cruel than that needed to constitute the offense. This court recognizes gratuitous harm as particular cruelty. *State v. Hamilton*, 348 N.W.2d 112 (Minn.Ct.App. 1984).

*Criminal sexual conduct in the first degree*

Jeno was charged under Minn.Stat. § 609.342(e)(i) (1983 Supp.) (criminal sexual conduct in the first degree) which provides:

A person is guilty of criminal sexual conduct in the first degree ... if he engages in sexual penetration with another person and if

\*      \*      \*      \*      \*      \*

(e) The actor causes personal injury to the complainant, and . . .

(i) The actor uses force or coercion to accomplish sexual penetration . . .

*The departure report*

██ The trial court's departure report gives one reason for the upward departure: Jeno acted with particular cruelty. The departure report enumerates the following acts of cruelty:

1. Repeated beating of the victim's head.

2. Forcing the victim to submit to two types of sexual penetration and attempting another type of penetration.

3. Forcing the victim to continue oral sex when she had difficulty breathing.

4. Causing the victim great pain and bodily harm by inserting his finger in her vagina and digging around.

5. Kicking the victim in the back while she was praying in a kneeling position and after he gave her permission to pray.

6. Attempting to bring the victim to a different location presumably to continue the assault.

7. Causing the victim to be hospitalized for over 24 hours for injuries documented in photos shown to the trial court.

Jeno argues that the acts cited by the trial court constitute elements of the offense and cannot be considered grounds for departing upward. Even though some of Jeno's acts may not have differed in kind from that of other rapists', other acts were sufficiently different in degree to justify a departure upward. *See State v. Martinez,* 319 N.W.2d 699 (Minn.1982). At least part of Jeno's attack was gratuitous. It is hard to imagine any reason for kicking the victim while she knelt other than to further humiliate, degrade, and physically harm her. The photos of the victim also reveal that she was badly beaten. Also, Jeno's "digging" around inside the victim's vagina was particularly cruel and likely brought about the victim's excessive vaginal bleeding.

**DECISION**

The defendant's acts of particular cruelty constituted substantial and compelling reasons to support the trial court's double durational departure.

Affirmed.