STATE of Minnesota, Respondent,

v.

Daniel E. JONES, Appellant.

No. A06–1719.

Supreme Court of Minnesota.

March 13, 2008.

OPINION

ANDERSON, RUSSELL A., Chief Justice.

Appellant Daniel E. Jones was convicted of third-degree criminal sexual conduct, Minn.Stat. § 609.344, subd. 1(d) and (2) (2006); third-degree controlled substance crime, Minn.Stat. § 152.023, subd. 1(3) (2006); neglect of a child, Minn.Stat. § 609.378, subd. 1(a)(1) (2006); and endangerment of a child, Minn.Stat. § 609.378,

subd. 1(b)(1). He was acquitted of third-degree murder, Minn.Stat. § 609.195(b) (2006). The district court imposed an enhanced sentence for the criminal sexual conduct conviction. The court of appeals affirmed the convictions but reversed the enhanced sentence and remanded for resentencing in accord with *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). On remand, the district court reimposed the enhanced sentence based on facts the district court concluded the jury necessarily found by its verdicts of guilty on child neglect and endangerment. The court of appeals affirmed. Concluding that Jones has the right to a jury determination of the facts that would justify an enhanced sentence, we reverse and remand for resentencing.

On November 6, 2000, Jones was in a trailer home in Burnsville with a friend, Jones' 15–year–old cousin, and a 16–year–old girl, B.P. That afternoon, all four individuals ingested methamphetamine before traveling by limousine service to a south Minneapolis home to watch a football game. While at the Minneapolis home, B.P. began shaking and perspiring. Around 8:30 p.m., Jones called the limousine service for a ride for him and B.P. back to the trailer home, telling his cousin that he would take care of B.P. When the limousine arrived, B.P. was "wobbly" and needed help walking out to the vehicle. On the ride to Burnsville, B.P. was agitated and stressed. When they arrived at the trailer, the driver carried her inside and laid her on the couch. The driver noted that she was incoherent and soaked in perspiration. He told Jones to get some ice, thinking that would help. After about 5 or 10 minutes, the driver left the trailer, leaving Jones alone with B.P.

Jones' cousin and his friend returned to the trailer a couple hours later. They had to pound on the door for several minutes before Jones let them in. When they entered, B.P. was lying on a bed, dressed only in her underwear. She was not moving or breathing. When efforts to revive her failed, the cousin and friend drove her to the hospital. Although medical personnel found a pulse, she died shortly after midnight. The cause of death was methamphetamine toxicity.

Law enforcement obtained information from the cousin and friend implicating Jones, and they used information obtained from the cousin's cell phone to locate the trailer home. Forensic testing of a comforter seized from the trailer home and of B.P.'s undergarment yielded semen samples matching Jones' DNA profile. There was also semen present on a vaginal swab from B.P. matching Jones' DNA profile.

Jones was indicted by grand jury for third-degree murder, third-degree criminal sexual conduct, third-degree controlled substance crime, child neglect, and child endangerment. Following a jury trial, he was acquitted of murder but convicted of the remaining offenses. The district court sentenced Jones to a prison term of 102 months for the criminal sexual conduct conviction, which is an upward durational departure of 24 months from the presumptive guidelines sentence of 78 months, together with 5 years of conditional release.[1]

On appeal, Jones challenged the evidentiary support for the convictions and the validity of the enhanced sentence based on facts not found by the jury, in violation of the *Blakely* decision, which was filed less than 2 months after Jones was sentenced. The court of appeals affirmed the convictions, but reversed the enhanced sentence and remanded for resentencing in accor-

---

1. Jones was also sentenced to a concurrent prison term of 27 months for the third-degree controlled-substance offense. This portion of Jones' sentence is not in dispute.

dance with *Blakely.* *State v. Jones,* No. A04–1303, 2005 WL 2008492, *1 (Minn. App.), *rev. denied* (Minn. Nov. 22, 2005). Upon remand, the district court reimposed the 102–month sentence, reasoning that the child-neglect and child-endangerment verdicts satisfied the fact-finding requirement of *Blakely* for an upward departure on the third-degree criminal sexual conduct conviction. The court of appeals affirmed, and we granted review. *State v. Jones,* 733 N.W.2d 160, 165 (Minn.App.), *rev. granted* (Minn. Aug. 21, 2007).

## I.

■ "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The statutory maximum "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531 (emphasis in original). Here, in articulating the reasons for the upward departure, the district court on remand stated that

> [Jones] was found guilty of felony Neglect and felony Child Endangerment. By these convictions, the jury found that [Jones] deprived the victim of health care or supervision, and that deprivation resulted in substantial harm to the victim's physical health—that [Jones] failed to provide health care or supervision to the victim during a time when he was the only person who could have helped her, and that neglect/endangerment caused her death.

The court concluded that because the sentencing departure was based on facts reflected in the jury's guilty verdicts for

child neglect and child endangerment, the *Blakely* fact-finding requirements had been satisfied.

■ The Minnesota Sentencing Guidelines "were created to assure uniformity, proportionality, rationality, and predictability in sentencing." *State v. Misquadace,* 644 N.W.2d 65, 68 (Minn.2002) (citing Minn.Stat. § 244.09, subd. 5(2) (2006)). Under the guidelines, "imposition of the presumptive sentence is mandatory absent additional findings." *State v. Shattuck,* 704 N.W.2d 131, 141 (Minn.2005). And consistent with *Blakely,* "for felonies other than first-degree murder the presumptive sentence prescribed by the Minnesota Sentencing Guidelines is 'the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant.'" *Id.* (quoting *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531).

■ The guidelines sentencing scheme intended that departures from the presumptive sentence be the exception, having application "to a small number of cases," and that "each departure must be based on the offense of conviction." *Misquadace,* 644 N.W.2d at 68. Departures are warranted only when substantial and compelling circumstances are present. *State v. McIntosh,* 641 N.W.2d 3, 8 (Minn. 2002). Substantial and compelling circumstances are those demonstrating that "the defendant's conduct in the offense of conviction was *significantly* more or less serious than that typically involved in the commission of the crime in question." *Misquadace,* 644 N.W.2d at 69 (citing *State v. Cox,* 343 N.W.2d 641, 643 (Minn. 1984)) (emphasis added). The guidelines provide a nonexclusive list of aggravating factors that may be used as reasons for departure. Minn. Sent. Guidelines II.

D.2(b).[2]

Although failure to obtain medical care is not included in the guidelines list, we recognized failure to seek aid as an indication that the crime was committed in a particularly cruel way. *State v. Jones*, 328 N.W.2d 736, 738 (Minn.1983) (citing *State v. Stumm*, 312 N.W.2d 248, 249 (Minn. 1981)). Nevertheless, these failure-to-seek-aid cases were decided in the "early stages of the determinate guidelines system in which 'real time' sentences revealed relatively short terms typically served" under the prior indeterminate parole board system. *Taylor v. State*, 670 N.W.2d 584, 589 (Minn.2003). The guidelines have since been adjusted, substantially increasing sentence durations for the most serious offenders, and now including a separate grid for sex offenders. *Compare* Minn. Sent. Guidelines IV (1980) *with* Minn. Sent. Guidelines IV (2007).

▇▇▇ Also since the time of our early decisions involving the guidelines, our jurisprudence related to limitations on redundant enhancements is much more developed.[3] Among the boundaries identified for proper departure is that "[t]he reasons used for departing must not themselves be elements of the underlying crime." *State v. Blanche*, 696 N.W.2d 351, 378–79 (Minn.2005) (citing *State v. Thao*, 649 N.W.2d 414, 423–24 (Minn.

2002)); *accord State v. Osborne*, 715 N.W.2d 436, 447 (Minn.2006) (holding that elements of lesser-included offenses "cannot support upward sentencing departures"). Departures cannot be based on uncharged or dismissed offenses. *Taylor*, 670 N.W.2d at 588. Departures cannot be based on conduct underlying an offense of which the defendant was acquitted. *State v. Givens*, 332 N.W.2d 187, 190 (Minn.1983) (concluding that departure for third-degree murder could not be based on conduct implicit in jury's acquittal of first-degree murder). And conduct underlying one conviction cannot be relied on "to support departure on a sentence for a separate conviction." *State v. Williams*, 608 N.W.2d 837, 840 (2000) (citing *State v. Spaeth*, 552 N.W.2d 187, 196 (Minn.1996) (holding that it was impermissible to use conduct that resulted in victim's murder as aggravating factors for burglary conviction)).

▇▇▇ Based on this precedent, there are several flaws with the enhanced sentence in this case. First, the *Blakely* fact-finding requirements were not satisfied because the jury did not make the findings needed to support the departure reasons given by the court. Neither the child-neglect verdict nor the child-endangerment verdict reflected jury findings

---

**2.** These aggravating factors include: a victim's particular vulnerability known to the offender, particularly cruel treatment of the victim, repeat criminal sexual conduct involving victim injury, major economic offenses, major controlled substance offenses, crimes for hire, pattern sex offenders, dangerous offenders, group crimes, hate crimes, and certain identity-theft crimes. Minn. Sent. Guidelines II.D.2(b).

**3.** Before the sentencing guidelines became effective May 1, 1980, proportionality review of a sentence was not allowed. So long as the sentence imposed was within the statutory limits for the offense in question, this court

would not intervene. *State v. Whitledge*, 500 N.W.2d 488, 489 (Minn.1993) (citations omitted). We had, however, recommended the problem of disparities in sentencing and the widely expressed view that sentences in serious criminal cases be subject to appellate review to the legislature for consideration. *State v. Gamelgard*, 287 Minn. 74, 80, 177 N.W.2d 404, 408 (1970). The legislature thereafter authorized expanded appellate review of sentencing, including proportionality review. Act of April 5, 1978, ch. 723, art. 1, § 11, 1978 Minn. Laws 761, 768 (codified at Minn.Stat. § 244.11 (2006)).

that the neglect or endangerment caused the victim's death,[4] and Jones was acquitted of the homicide so it could not be a basis for enhancement. *Givens*, 332 N.W.2d at 190. Second, the enhancement was not based on the offense of conviction, third-degree criminal sexual conduct. *Misquadace*, 644 N.W.2d at 68. The neglect and endangerment verdicts did not demonstrate that Jones' conduct in the sexual conduct crime was significantly more serious "than that typically involved in the commission" of that crime. *Id.* at 69. Finally, the conduct underlying the neglect and endangerment convictions could not be used to support the departure for the separate criminal sexual conduct conviction. *Williams*, 608 N.W.2d at 840.

In addition, Minn.Stat. § 609.035 (2006) prohibits cumulative punishment for conduct that constitutes more than one offense. The statute provides that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." *Id.* The statute "contemplates that a defendant will be punished for the 'most serious' of the offenses arising out of a single behavioral incident because 'imposing up to the maximum punishment for the most serious offense will include punishment for all offenses.'" *State v. Kebaso*, 713 N.W.2d 317, 322 (Minn. 2006) (quoting *State v. Johnson*, 273 Minn. 394, 399, 141 N.W.2d 517, 522 (1966)).[5]

The legislature has amended Minn.Stat. § 609.035 to authorize cumulative punishment for certain enumerated crimes, including criminal sexual conduct when committed with force or violence. *Id.*, subd. 6.[6] The statutory exceptions reflect legislative determinations concerning specific conduct that is eligible for increased punishment even when committed as part of the same behavioral incident. However, there is no such exception for the variety of criminal sexual conduct involved in this case.

Nevertheless, Jones' aggravated 24–month durational departure for the crimi-

---

4. Child neglect occurs when "[a] parent, legal guardian, or caretaker * * * willfully deprives a child of necessary food, clothing, shelter, health care, or supervision appropriate to the child's age" when such deprivation "harms or is likely to substantially harm the child's physical, mental, or emotional health." Minn.Stat. § 609.378 subd. 1(a) (2006). At trial, the court defined substantial harm for the jury as "bodily harm that involves a temporary but substantial disfigurement, causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or causes a fracture of any bodily member." By instructions and special verdict form, the jury was asked to find only whether the neglect resulted in substantial harm.

Child endangerment occurs when "[a] parent, legal guardian, or caretaker * * * endangers the child's person or health by * * * intentionally or recklessly causing or permitting a child to be placed in a situation likely to substantially harm the child's physical, mental, or emotional health or cause the child's death." Minn.Stat. § 609.378, subd. 1(b)(1) (2006). As with neglect, the jury was asked to find only whether or not the endangerment resulted in substantial harm.

5. The State does not contest that the offenses charged in this case arise from the same behavioral incident.

6. Minnesota Statutes § 609.035, subd. 6, provides:

Notwithstanding subdivision 1, a prosecution or conviction for committing a violation of sections 609.342 to 609.345 *with force or violence* is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct. If an offender is punished for more than one crime as authorized by this subdivision and the court imposes consecutive sentences for the crimes, the consecutive sentences are not a departure from the Sentencing Guidelines.

(Emphasis added.)

nal sexual conduct conviction based on the child neglect and child endangerment verdicts, in reality, amounted to cumulative punishment. Child neglect and child endangerment are level I felonies. Minn. Sent. Guidelines V (2000) (offense severity reference table). The offenses are eligible for permissive consecutive sentences, but only when the presumptive disposition is a commitment to prison. *Id.* II.F. If the neglect or endangerment conviction were to be sentenced last, with Jones' criminal history score of four, the presumptive sentence would be a stayed 15–month term. *Id.* IV (guidelines grid).[7] As such, the 24–month enhancement imposed in this case resulted in a de facto consecutive sentence. *Cf. State v. Folley,* 438 N.W.2d 372, 374 (Minn.1989) (advising courts "to ensure that the withholding of jail credit does not result in a *de facto* departure with respect to consecutive service"). Even if the neglect or endangerment conviction were to be sentenced consecutively, which would. be a departure, the criminal history score would be zero and the presumptive duration would be 1 year and 1 day. Minn. Sent. Guidelines II.F, IV.

Accordingly, reliance on conduct underlying the child neglect and child endangerment verdicts to enhance the sentence for the criminal sexual conduct conviction amounted to cumulative punishment, in derogation of Minn.Stat. § 609.035. In achieving the sentencing guidelines goals of uniformity, proportionality, rationality, and predictability in sentencing, "substantial efforts have been made to avoid systematic manipulation." *State v. Zeimet,* 696 N.W.2d 791, 796 (Minn.2005). Sentences that are not authorized by the legislature undermine this policy of rational sentencing. In summary, we conclude that the child neglect and child endangerment verdicts did not satisfy *Blakely.*

## II.

When the district court's reasons stated on the record for a departure are improper or inadequate, our past practice has been to independently examine the record to determine if "there is sufficient evidence in the record to justify departure" for legitimate reasons. *State v. Geller,* 665 N.W.2d 514, 516 (Minn.2003) (quoting *Williams v. State,* 361 N.W.2d 840, 844 (Minn.1985)). *Blakely,* however, "has clarified that the fact finding function must be done by the jury, unless waived by the defendant." *State v. Thompson,* 720 N.W.2d 820, 832 (Minn.2006) (Hanson, J., dissenting). Consequently, Jones is entitled to a jury determination of the facts that would justify an enhanced sentence. We therefore reverse the enhanced sentence and remand for resentencing. On remand, the district court may impose the presumptive guidelines sentence or, unless waived by Jones, empanel a resentencing jury. Given the amount of time that Jones has already been incarcerated on this matter, this should be done on an expedited basis.

Reversed and remanded.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

7. Minnesota Statutes § 609.035 would bar sentencing on both the child neglect and child endangerment convictions.