**STATE of Minnesota, Respondent,**

v.

**Harold David YARITZ, Appellant.**

**No. A10–14.**

Court of Appeals of Minnesota.

Nov. 30, 2010.

Lori A. Swanson, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, Afsheen D. Fo-roozan (certified student attorney), St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Sean Michael McGuire, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; LARKIN, Judge; and STAUBER, Judge.

## OPINION

LARKIN, Judge.

Appellant challenges his sentence of 288 months for one count of first-degree criminal sexual conduct, claiming that the district court abused its discretion by imposing an upward durational departure from the presumptive sentence of 144 to 173 months. Appellant argues that the district court relied on aggravating factors that were either not legally appropriate or not proved. Because the district court relied on legally permissible aggravating factors, which are factually supported by the record, and because the sentence does not otherwise constitute an abuse of discretion, we affirm.

## FACTS

In June 2009, appellant Harold David Yaritz lived with his wife, daughter, and two stepchildren. Early in the morning hours of June 6, Yaritz entered the bedroom of his 17–year–old stepdaughter, L.A. As L.A. slept, Yaritz applied a chloroform-soaked sock to her face. Yaritz would later testify that he knew that if he chloroformed L.A. while she slept, she would not wake up during the impending sexual assault. After ensuring that L.A. was defenseless, Yaritz took off her clothing, put his penis against her lips, and inserted his fingers into her vagina. Yaritz also took a close-up photograph of L.A.'s vagina after he used his fingers to

spread the lips of her vagina. Taking full advantage of L.A.'s helpless state, Yaritz posed L.A. in different positions and took 14 still photographs of her. He also made three separate video recordings of his assault.

As Yaritz filmed the third video, L.A. began to wake up. Yaritz got on top of her, held her down, and again applied the chloroform to her face. As shown on one of the video recordings, L.A. began to kick and scream, causing Yaritz's wife to enter the bedroom. Yaritz chased his wife out of the room, and she called the police. At approximately 3:00 a.m., St. Paul police officers were dispatched to the home. Yaritz refused to cooperate with the police, and a Tazer was used to subdue him.

The state charged Yaritz with one count of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(e)(ii) (2008), and one count of use of a minor in a sexual performance in violation of Minn.Stat. § 617.246, subd. 2 (2008). The state notified Yaritz of its intent to seek an aggravated sentence. Yaritz pleaded guilty to both counts pursuant to a plea agreement and waived his right to a trial on aggravated sentencing factors. The plea agreement capped Yaritz's potential sentence at 288 months.

At the guilty-plea hearing, Yaritz testified that he blamed L.A. for his failing relationship with his wife and that he felt the need to control or punish L.A. Yaritz admitted that he researched different chloroform companies on the Internet and that he purchased the chloroform online. Yaritz testified that he transferred the chloroform to a "Melatonin" bottle because the dropper on that bottle would make it easier to apply the chloroform to a sock. He admitted that he tore L.A.'s vagina during the assault and that the chloroform caused surface burns to L.A.'s face and vagina.

At the sentencing hearing, the state sought a sentence of 288 months. Yaritz requested 173 months, which is the high end of the applicable presumptive-sentence range of 144 to 173 months. The district court found that aggravating factors justify a departure from the presumptive range and sentenced Yaritz to serve 288 months in prison on his first-degree criminal-sexual-conduct conviction. The district court found that the following circumstances justify the upward durational departure: the particular cruelty with which Yaritz treated L.A., L.A.'s double vulnerability as a person who was asleep and then chloroformed, Yaritz's multiple acts of sexual abuse, Yaritz's planning and sophistication, and Yaritz's use of chloroform as a dangerous weapon. The district court did not impose a sentence on the use-of-a-minor-in-a-sexual-performance offense. Yaritz appeals.

## ISSUES

I. Did the district court err by failing to make findings of fact in support of its stated departure grounds?

II. Did the district court err by relying on impermissible departure grounds or grounds that are not factually supported by the record?

III. Did the district court abuse its discretion by imposing an aggravated sentence of 288 months?

## ANALYSIS

 "The Minnesota Sentencing Guidelines were created to promote uniformity, proportionality, rationality, and predictability in sentencing." *State v. Edwards*, 774 N.W.2d 596, 601 (Minn.2009). The legislature, through the guidelines, seeks to ensure that "sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal

history." Minn. Sent. Guidelines I (2008). Departures from the presumptive sentence are intended to be the exception, having application "to a small number of cases." *State v. Misquadace,* 644 N.W.2d 65, 68 (Minn.2002). Unless there are "substantial and compelling circumstances" to warrant an upward departure, the district court must order the presumptive sentence provided by the guidelines. Minn. Sent. Guidelines II.D (2008). Substantial and compelling circumstances exist when "the defendant's conduct in the offense of conviction was significantly more or less serious than that typically involved in the commission of the crime in question." *Misquadace,* 644 N.W.2d at 69.

■■■ When departing from the sentencing guidelines, a district court must state the reasons why substantial and compelling circumstances justify a sentencing departure. *See* Minn. Sent. Guidelines II.D (stating, "in exercising the discretion to depart from a presumptive sentence, the judge must disclose in writing or on the record the particular substantial and compelling circumstances that make the departure more appropriate than the presumptive sentence"). "The guidelines provide a nonexclusive list of aggravating factors that may be used as reasons for departure." *State v. Jones,* 745 N.W.2d 845, 848 (Minn.2008); *see also* Minn. Sent. Guidelines II.D.2.(b). "[W]hether a particular reason for an upward departure is permissible is a question of law, which is subject to a de novo standard of review." *State v. Grampre,* 766 N.W.2d 347, 350 (Minn.App. 2009), *review denied* (Minn. Aug. 26, 2009). We review a district court's departure from the sentencing guidelines for an

abuse of discretion. *Id.* "If the reasons given for an upward departure are legally permissible and factually supported in the record, the departure will be affirmed." *Edwards,* 774 N.W.2d at 601.

## I.

■■■ We begin with Yaritz's complaint that the district court failed to make factual findings in support of its stated departure grounds. Any fact, other than a prior conviction, that is necessary to support a sentence greater than the maximum authorized by the facts established by a guilty plea or guilty verdict must either be admitted by the defendant or proved to a jury beyond a reasonable doubt. *Blakely v. Washington,* 542 U.S. 296, 301, 303–04, 124 S.Ct. 2531, 2536–37, 159 L.Ed.2d 403 (2004).

Yaritz complains that "while [he] allowed the court, and not a jury to find facts relating to the departure, the court never actually made any factual findings." Yaritz suggests that the district court was required to make factual findings regarding his sworn admissions. But the colloquy regarding Yaritz's sentencing-trial waiver shows that Yaritz's trial counsel repeatedly advised him that he had a right to a contested sentencing trial before a judge or a jury and that Yaritz expressly waived his right to both. Yaritz also executed and submitted a Petition Regarding Aggravated Sentence in support of his waiver. This document states that "if I admit the facts in support of an aggravated sentence, I will not have a trial by either a jury or a judge."[1] Moreover, at the sentencing hearing, Yaritz's trial coun-

---

1. Given Yaritz's consistent acknowledgment that he was waiving his right to a trial by jury or judge, there is no reason to believe that the parties or the district court intended to proceed with a trial on stipulated facts under Minn. R.Crim. P. 26.01, subdivision 3. *See*

Minn. R.Crim. P. 26.01, subd. 3 (providing that "[b]y agreement of the defendant and the prosecuting attorney, a determination of . . . the existence of facts to support an aggravated sentence . . . may be submitted to and tried by the court based on stipulated facts").

sel explained the procedural process that was to occur as follows: "My understanding is that due to the *Blakely* waiver Your Honor is going to determine whether aggravating factors exist based on the facts that were entered at the time of the plea." Because Yaritz waived a sentencing trial and made sworn admissions regarding the facts that support the departure, there was no need for the district court to make findings of fact: Yaritz's uncontested admissions established the facts.

And we are not persuaded by Yaritz's suggestion that meaningful appellate review is not possible because the district court did not make factual findings that "articulate[ ] the rationale for its conclusion[s]." The Minnesota Supreme Court's decision in *State v. Rourke* is instructive in this regard. 773 N.W.2d 913 (Minn.2009). The issue in *Rourke* was whether an aggravating-sentencing factor is a "fact" that must be submitted to the jury in a sentencing trial or a "reason" that explains why the facts establish a substantial and compelling reason to depart. *Id.* at 920. The supreme court concluded that an aggravating factor is a "reason that explains why the additional facts found by the jury provide the district court a substantial and compelling basis [to depart from the sentencing guidelines] grid." *Id.* Although the district court must explain why the factual circumstances provide a substantial and compelling reason to depart, "[t]hese explanations do not involve finding facts." [2] *Id.*

When the facts are established by a jury's special interrogatories or a defendant's post-waiver, sworn admissions—as is the case here—we discern no useful

purpose in requiring the district court to restate the substance of the facts as "findings of fact." Instead, the record is adequate if the district court clearly identifies the aggravating factors on which it relies and thereby explains why the facts provide a substantial and compelling reason to depart. *See Rourke,* 773 N.W.2d at 920 (explaining that aggravating factors are "*reasons* explaining why the *facts* of the case provide the district court a substantial and compelling basis" to depart). For these reasons, we reject Yaritz's argument that the district court erred by failing to make findings of fact in support of the sentencing departure.

## II.

■■■ The district court identified the aggravating factors that explain why Yaritz's admissions provide a substantial and compelling basis to depart from the presumptive sentence: particular cruelty, particular vulnerability, multiple acts of sexual abuse, planning and sophistication, and the use of chloroform as a dangerous weapon. "[I]f a district court's reasons for a departure are stated on the record, an appellate court must determine whether the stated reasons justify the departure." *Grampre,* 766 N.W.2d at 351. But first, we must determine whether the reasons provided are legally permissible and factually supported by the record. *See Edwards,* 774 N.W.2d at 601. We address each of the aggravating factors relied on by the district court in turn.

### Particular Cruelty

■■ Particular cruelty is a permissible aggravating factor under the sentencing

---

2. Minn. R.Crim. P. 27.03, subd. 4(C), provides that if a felony sentence departs from the sentencing guidelines, "the court shall state, on the record, findings of fact as to the reasons for departure." This requirement must

be read in light of *Rourke's* conclusion that a district court's explanation regarding why the facts provide a substantial and compelling reason to depart does not involve fact-finding.

guidelines. Minn. Sent. Guidelines II. D.2(b)2. The supreme court has explained that particular cruelty "involves the gratuitous infliction of pain and cruelty of a kind not usually associated with the commission of the offense in question." *Rourke*, 773 N.W.2d at 922 (quotations omitted). Yaritz admitted that he undressed L.A., after he used chloroform to render her physically helpless while she slept. L.A. woke up during the assault, nude, to find her stepfather on top of her, holding her down, and shoving a chloroform-soaked sock against her face as she kicked and screamed for him to get off of her. And the chloroform caused surface burns to her face. The district court did not err by concluding that this conduct involves cruelty of a kind not usually associated with first-degree criminal sexual conduct. *See State v. Jeno*, 352 N.W.2d 82, 83–85 (Minn.App. 1984) (affirming upward departure based on particular cruelty where defendant humiliated a sexual-assault victim and attacked and injured her as she resisted).

*Particular Vulnerability*

██ The particular vulnerability of the victim is a permissible aggravating factor under the sentencing guidelines. Minn. Sent. Guidelines II.D.2(b)1. And this court has recognized a victim's sleeping state as a form of "particular vulnerability." *See State v. Skinner*, 450 N.W.2d 648, 654 (Minn.App.1990) (concluding that the victim's vulnerability was increased because the offender began touching her while she was asleep), *review denied* (Minn. Feb. 28, 1990); *State v. Bingham*, 406 N.W.2d 567, 570 (Minn.App.1987) (concluding that the victim was in a vulnerable position when the offender began to assault her while she slept).

But "[t]he reasons used for departing must not themselves be elements of the underlying crime." *State v. Jones*, 745

N.W.2d 845, 849 (Minn.2008) (alteration in original). Yaritz was convicted of first-degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(e)(ii). A person is guilty of this offense if the person engages in sexual penetration with the complainant, the person causes personal injury to the complainant, and the person knows or has reason to know that the complainant is physically helpless. Minn. Stat. § 609.342, subd. 1(e)(ii). Yaritz argues that because physical helplessness is an element of the charged offense, it is not a permissible departure basis.

Yaritz's argument would be more persuasive if L.A.'s sleeping state were the sole basis for the district court's vulnerability finding. But as the district court found, Yaritz exacerbated L.A.'s vulnerability by applying chloroform to her face while she slept to ensure that she would not wake up during the assault. We have previously upheld an upward departure based on "double" vulnerability. *See State v. Gettel*, 404 N.W.2d 902, 906–07 (Minn. App.1987) (affirming an upward departure, in part, based on the vulnerability of the victim due to the combination of her prior use of alcohol and her sleeping state when she was accosted), *review denied* (Minn. June 26, 1987). Although L.A.'s sleeping state satisfies the element of physical helplessness under Minn.Stat. § 609.342, subd. 1(e)(ii), Yaritz's use of chloroform on L.A. while she slept makes the facts of this case substantially and materially different from those of a typical offense under this section. Thus, the district court did not err by relying on the particular-vulnerability aggravating factor.

*Multiple Forms of Penetration*

██ "The fact that a defendant has subjected a victim to multiple forms of penetration is a valid aggravating factor in first-degree criminal sexual conduct cases." *State v. Adell*, 755 N.W.2d 767,

774 (Minn.App.2008), *review denied* (Minn. Nov. 25, 2008). "Sexual penetration" is defined, in relevant part, as

> any of the following acts committed without the complainant's consent, except in those cases where consent is not a defense, whether or not emission of semen occurs: (1) sexual intercourse, cunnilingus, fellatio, or anal intercourse; or (2) any intrusion however slight into the genital or anal openings: (i) of the complainant's body by any part of the actor's body or any object used by the actor for this purpose.

Minn.Stat. § 609.341, subd. 12 (2008).

Yaritz concedes that multiple forms of sexual penetration during a single behavioral incident is a valid departure ground and that he admitted facts sufficient to support the district court's reliance on the "multiple-acts"[3] aggravating factor. But Yaritz argues that his multiple acts of penetration are minimal compared to the number and type of multiple penetrations that have justified departures in other cases.

Yaritz put his penis against L.A.'s lips. Yaritz also inserted his fingers into L.A.'s vagina and spread the lips of her vagina. Although this conduct satisfies the statutory definition of penetration, we recognize that other multiple-penetration departure cases involve more intrusive and numerous acts of penetration. *See, e.g., Ture v. State,* 353 N.W.2d 518, 520, 523 (Minn. 1984) (affirming a more-than-double durational departure where the defendant forced the victim to commit fellatio and to submit to cunnilingus and sexual intercourse); *State v. Abrahamson,* 758 N.W.2d 332, 338–39 (Minn.App.2008) (holding that the variety of sexual acts to which the victim was exposed was a valid aggravating factor that supported an upward durational departure for criminal sexual conduct), *review denied* (Minn. Mar. 31, 2009). But this court has affirmed an upward departure based on two acts of penetration. *See State v. Mesich,* 396 N.W.2d 46, 52–53 (Minn.App.1986) (affirming a more-than-double-upward departure based, in part, on penetration of the victim's vagina and mouth), *review denied* (Minn. Jan. 2, 1987). Ultimately, the record supports the district court's reliance on the multiple-penetration aggravating factor.

*High Degree of Planning*

■ A defendant's high degree of planning is a recognized aggravating factor. *See State v. Kindem,* 338 N.W.2d 9, 17–18 (Minn.1983) (citing planning as an appropriate aggravating factor to justify a sentencing departure). In *State v. Bock,* this court affirmed an upward departure where the defendant "spent a great deal of time planning to attack [the victim] when he was alone in the middle of the night, a time when he was most vulnerable." 490 N.W.2d 116, 121 (Minn.App.1992), *review denied* (Minn. Aug. 27, 1992); *see also Kindem,* 338 N.W.2d at 17 (holding that an upward departure was appropriate where the defendant did "an immense amount of planning to determine when the victim would be most vulnerable"); *Grampre,* 766 N.W.2d at 353 (finding a high degree of planning to be an appropriate aggravating factor where the defendant "wore a stocking cap and hooded sweatshirt to conceal his identity; . . . brought with him a knife, a golf club, and a rope; . . . forced the victim to shower after the assault; and . . . he cut out and later destroyed the portion

---

**3.** The record indicates, and Yaritz does not dispute, that the district court's reference to "multiple acts of sexual abuse" is a reference to multiple forms of penetration during the charged incident and not to incidents of sexual abuse on other occasions.

of the bed sheet on which he had ejaculated").

The record supports the district court's reliance on this aggravating factor. Yaritz testified that he researched and purchased the chloroform online and that he observed the effects of the chloroform by applying it to mice before he used it on L.A. He admitted that he decided to use the chloroform on L.A. because he wanted to control and punish her. He also testified that he transferred the chloroform into a "Melatonin" bottle because the transfer would make it easier to dispense the chloroform onto a sock, which he planned to use to apply the chloroform to L.A.'s face. Moreover, Yaritz committed the assault during the middle of the night, while L.A. and the rest of her family slept. The district court did not err by relying on Yaritz's planning as an aggravating factor.

*Use of a Dangerous Weapon*

██ Yaritz argues that the record does not support the district court's determination that he used chloroform as a dangerous weapon. A dangerous weapon is defined, in relevant part, as any "device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Minn.Stat. § 609.02, subd. 6 (2008). Great bodily harm is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." *Id.*, subd. 8 (2008).

Yaritz asserts that the district court's dangerous-weapon determination lacks evidentiary support because the state failed to introduce "expert testimony, blood tests, or any other evidence to show that the use of chloroform—either as specifically used in this case, or generally—was dangerous." But dangerous-weapon determinations are often made without the benefit of expert testimony. *See State v. Moyer*, 298 N.W.2d 768, 770 (Minn.1980) (affirming district court finding that throwing a match or firebomb at gasoline fits the statutory definition of "dangerous weapon," without reference to expert testimony). And the district court's determination in this case is supported by the record. Yaritz admitted that he applied chloroform to L.A.'s face to ensure that she would remain unconscious during the assault. Yaritz also testified that when he tested the effect of the chloroform, it knocked a mouse out and may have killed it.[4]

██ Yaritz further asserts that the record does not establish that L.A. was exposed to a dangerous amount of chloroform, relying on the fact that she woke up during the assault. But whether an object is a dangerous weapon does not turn on the nature and severity of the victim's injuries. *State v. Basting*, 572 N.W.2d 281, 285 (Minn.1997). The fact that L.A. was not rendered unconscious for a longer period of time does not lessen the dangerous nature of chloroform, which is demonstrated by the record.

Yaritz alternatively argues that even if chloroform is a dangerous weapon, his use of chloroform is an impermissible departure ground because the use constitutes an uncharged offense. *See* Minn.Stat. § 609.342, subd. 1(d) (2008) (providing that a person is guilty of criminal sexual conduct in the first degree if the person engages in sexual penetration with the complainant and the person is "armed with a

---

**4.** Yaritz testified that because the mouse would not move anymore, he "assumed that it was dead" and threw it out in the yard.

dangerous weapon ... and uses ... the weapon ... to cause the complainant to submit").

▮▮▮ "Departures cannot be based on uncharged or dismissed offenses." *Jones,* 745 N.W.2d at 849. Moreover, a departure may not be based on facts that could have been used to convict the defendant under another subdivision or subpart of the charging statute. *See State v. Simon,* 520 N.W.2d 393, 394 (Minn.1994) (holding that if a defendant is convicted of assault with a dangerous weapon, under the statutory predecessor to Minn.Stat. § 609.222, subd. 1 (2008), the district court may not base a departure on defendant's infliction of substantial bodily harm, chargeable under subdivision 2 of the same statute); *Adell,* 755 N.W.2d at 774 (agreeing that the district court's reliance on the aggravating factor of multiple acts of sexual abuse was improper because the multiple acts constituted uncharged criminal conduct under another subpart of the charging statute). A departure may not be based on uncharged offenses that were committed during commission of the charged offense because "if a person's conduct constitutes more than one offense under the law of this state, the person may be punished for only one of the offenses." Minn.Stat. § 609.035, subd. 1; *see State v. Jackson,* 749 N.W.2d 353, 357–58 (Minn. 2008) (noting that a departure cannot be based on uncharged criminal conduct and that section 609.035 prohibits cumulative punishment for conduct that constitutes more than one offense).

This court recently considered a similar impermissible departure ground, which also stems from the statutory prohibition against cumulative punishment. *See Grampre,* 766 N.W.2d at 351 (citing *Jones,* 745 N.W.2d at 849–50) (noting that, generally, conduct underlying one conviction cannot be relied on to support a sentencing

departure on a separate conviction because of the statutory prohibition against cumulative punishment for conduct that constitutes more than one offense). In *Grampre,* the defendant pleaded guilty to two counts of first-degree criminal sexual conduct, one count of first-degree burglary, and one count of second-degree assault. *Id.* at 349. The district court imposed aggravated sentences on each of the criminal-sexual-conduct convictions based, in part, on the defendant's use of a knife during the sexual assault. *Id.* at 350–51. On appeal, the defendant argued that his use of the knife was not a permissible departure ground because it was also the basis for his second-degree assault conviction. *Id.* at 351.

This court held that "if a defendant is convicted of committing criminal sexual conduct with force or violence, the district court may impose an upward departure based on evidence that also supports a conviction of another offense." *Id.* at 348. We based this holding on a statutory exception to the general prohibition against cumulative punishment. *Id.* at 351. The statutory exception provides:

> Notwithstanding subdivision 1, [which prohibits cumulative punishment], a prosecution or conviction for committing a violation of sections 609.342 to 609.345 with force or violence is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct. If an offender is punished for more than one crime as authorized by this subdivision and the court imposes consecutive sentences for the crimes, the consecutive sentences are not a departure from the Sentencing Guidelines.

Minn.Stat. § 609.035, subd. 6 (2008).

This court noted that the exception " 'reflect[s] legislative determinations concerning specific conduct that is eligible for

increased punishment even when committed as part of the same behavioral incident.'" *Grampre*, 766 N.W.2d at 351 (alteration in original) (quoting *Jones*, 745 N.W.2d at 850). And this court reasoned that because the defendant's use of the knife "easily fits within [the] definition of 'force' and, thus, triggers the statutory exception" to the prohibition against cumulative punishment, the prohibition did not apply, and the district court could rely on the otherwise impermissible departure ground. *Id.* at 352 (stating that the district court was permitted to consider the defendant's "use of the knife as evidence of particular cruelty, notwithstanding the fact that his use of the knife also was evidence supporting the conviction of second-degree assault").

Even though *Grampre* involves a different impermissible departure ground (i.e., conduct underlying a separate conviction instead of conduct supporting an uncharged offense), *Grampre*'s reasoning applies with equal force: because the rule against using uncharged criminal conduct as a basis for an upward departure stems from the prohibition under Minn.Stat. § 609.035, subd. 1, against cumulative punishment when an offender's conduct constitutes more than one offense, the rule need not apply when the prohibition is inapplicable. *See id.* We therefore consider whether the exception under section 609.035, subdivision 6, applies in this case, thereby permitting cumulative punishment.

We first note that the plain language of section 609.035, subdivision 6, does not limit its application to any particular charging provision within Minn.Stat. § 609.342, subdivision 1 (2008). And none of the charging provisions within section 609.342, subdivision 1 uses the phrase "force or violence." Moreover, depending on the facts of a particular case, the phrase "force or violence" could apply to several of the charging provisions within section 609.342, subdivision 1. *See, e.g.,* Minn.Stat. § 609.342, subd. 1(c) ("circumstances existing at the time of the act cause the complainant to have a reasonable fear of imminent great bodily harm to the complainant or another"); *id.,* subd. 1(d) ("the actor is armed with a dangerous weapon or any article used or fashioned in a manner to lead the complainant to reasonably believe it to be a dangerous weapon and uses or threatens to use the weapon or article to cause the complainant to submit"); *id.,* subd. 1(e) ("the actor causes personal injury to the complainant, and either of the following circumstances exist: (i) the actor uses force or coercion to accomplish sexual penetration; or (ii) the actor knows or has reason to know that the complainant is mentally impaired, mentally incapacitated, or physically helpless").

We also note that Yaritz's admissions that the chloroform caused surface burns to L.A.'s face and vagina, and that he tore L.A.'s vagina during the sexual assault, establish that he committed the offense with "force," as that term is defined for purposes of section 609.342, subdivision 1. *See* Minn.Stat. § 609.341, subd. 3 (2008) (defining "force" for the purposes of section 609.342, subdivision 1, in relevant part, as "the infliction ... by the actor of bodily harm"); Minn.Stat. § 609.02, subd. 7 (2008) (defining bodily harm to include "physical pain or injury ... or any impairment of physical condition"). We therefore conclude that Yaritz was prosecuted or convicted for violating section 609.342, subdivision 1, with force or violence. Accordingly, the statutory exception in section 609.035, subdivision 6, applies, and cumulative punishment is not prohibited. Thus, the district court was permitted to consider Yaritz's use of chloroform as an

aggravating factor, notwithstanding the fact that his use of chloroform constitutes an uncharged offense. *See Grampre,* 766 N.W.2d at 352.

In summary, we conclude that Yaritz's use of chloroform as a dangerous weapon, like each of the other aggravating factors relied on by the district court, is a legally permissible departure ground and factually supported by the record.

## III.

Yaritz argues that even if this court finds that one or more of the cited aggravating factors was appropriate, his behavior was not egregious enough to justify the "massive" departure in this case. Once again, we review a district court's decision to depart from the presumptive sentence for an abuse of discretion. *Id.* at 350. "If the reasons given for an upward departure are legally permissible and factually supported in the record, the departure will be affirmed." *Edwards,* 774 N.W.2d at 601. The district court may impose an upward sentencing departure "if the evidence shows that the defendant committed the offense in question in a particularly serious way." *Id.* In the final analysis, an appellate court's decision whether a particular durational departure is justified "must be based on [its] collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts." *State v. Norton,* 328 N.W.2d 142, 146–47 (Minn.1982).

Generally, "in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length." *State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981). Yaritz argues that the upward durational departure in this case is not justified when viewed in the context of recent changes in sentencing laws that significantly increased the presumptive sentences for criminal-sexual-conduct offenses. Yaritz asserts that "[g]iven the extreme sentences that are now designated as presumptive sentences, doubling those presumptive sentences automatically based upon questionable departure factors distorts the process." But the Minnesota Supreme Court rejected a similar argument in *Jackson,* concluding that "the continued efficacy of the *Evans* departure rule, if any, is a question more properly addressed by the [Minnesota Sentencing Guidelines] Commission." *Jackson,* 749 N.W.2d at 360.

Having considered the matter, we conclude that the five aggravating factors cited by the district court collectively justify the district court's upward durational departure in this case. Because Yaritz's sexual assault of his stepdaughter was committed in a particularly serious way, the district court did not abuse its discretion by imposing an upward departure that is twice the lower end of the presumptive-sentence range.

Yaritz has submitted a pro se brief raising several arguments. But the arguments are substantially similar to those raised by counsel in his principal brief. Accordingly, we do not address his pro se arguments separately.

## DECISION

The district court identified the reasons that explain why the facts of this case provide a substantial and compelling basis to depart from the presumptive sentence. Each of the reasons constitutes a legally permissible departure ground and is factually supported by the record. Because the record shows that Yaritz committed his first-degree criminal-sexual-conduct offense in a particularly serious way, the district court did not abuse its discretion

by imposing an upward sentencing departure of 288 months. We therefore affirm.

**Affirmed.**